(694 P.2d 1321)
No. 55,991

MID AMERICA AEROSPACE, INC., *Appellee*, v. DEPARTMENT OF HUMAN RESOURCES, *Appellant.*

Opinion filed February 7, 1985.

*Kay Y. Rute*, of Kansas Department of Human Resources, of Topeka, for the appellant.

*Betsy B. Patrick*, of Osawatomie, for the appellee.

Before PARKS, P.J., BRISCOE, J., and JEROME HARMAN, Chief Judge Retired, assigned.

BRISCOE, J.: The Department of Human Resources (Human Resources) appeals a judgment denying the claim of William· Johnson against Mid America Aerospace, Inc., (Mid America) for vacation pay and statutory penalties. Human Resources is the statutory assignee of Johnson's wage claim, having taken an assignment of his claim pursuant to K.S.A. 44-324(b) of the Kansas Wage Payment Act. Johnson, a former employee of Mid America, sought two weeks of wages in lieu of the two-week vacation he had scheduled but had not taken prior to his firing.

The two issues presented are: (1) Whether the employee's accrued vacation time constituted "earned wages" under K.S.A. 44-315(a); and (2) whether there was evidence the employer

willfully withheld wages, justifying an award of statutory penalties under K.S.A. 44-315(b).

When Johnson was hired on February 13, 1981, Mid America gave him a copy of the company's personnel handbook, which set out the following as the company's vacation policy:

"VACATIONS - The following schedule will be used to determine the amount of paid vacation time given to an employee:

| LENGTH OF EMPLOYMENT | PAID VACATION EARNED |
| --- | --- |
| After 6 months | 1 week |
| After 1 year | 2 weeks |
| After 5 years | 3 weeks |

There will be no accumulation of vacation. During your yearly review you will be advised of vacation eligibility for the following year. Vacation must be taken by the end of your anniversary year. Vacation time must be cleared by your supervisor. No more than 2 weeks can be taken at one time. If more time is needed, please clear with your supervisor. At least one vacation day must be taken at one time. No 1/2 days will be allowed. Vacation not taken by the end of the year will be lost."

Both parties rely on these provisions in the handbook to support their arguments and consider the provisions to be part of the employment contract between Johnson and Mid America.

In early April, 1982, after he had worked more than a year, Johnson scheduled a two-week vacation for late May and early June. As required, he obtained the approval of his supervisor.

Mid America fired Johnson on April 19, 1982. Johnson's position was that Mid America fired him because he filed a workers' compensation claim. The employer contended that Johnson quit after a dispute over lunch periods and work assignments. The Division of Employment of Human Resources determined Johnson was eligible for unemployment compensation, based on a finding that he was not discharged for breach of duty [K.S.A. 44-706(b)], but rather "because the employer found the worker to be unsatisfactory."

Johnson filed a wage claim with Human Resources, seeking two weeks' pay for his scheduled vacation. The hearing officer granted his claim, awarding $420 of vacation pay and $420 as statutory penalties under K.S.A. 44-315(b). The employer appealed to the district court. The district court reversed the hearing officer, ruling that Johnson had no right to vacation pay because the employment contract made no provision for the conversion of vacation time to a lump sum payment.

Employers are statutorily required to pay *earned* wages to employees who have been fired. K.S.A. 44-315(a) provides in part:

"Whenever an employer discharges an employee or whenever an employee quits or resigns, *the employer shall pay the employee's earned wages* not later than the next regular payday upon which he or she would have been paid if still employed . . . ." (Emphasis added.)

"Wages" is defined in K.S.A. 44-313(c) as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission *or other basis* less authorized withholding and deductions." (Emphasis added.)

In a regulation adopted by the Department of Human Resources, "or other basis" is defined as:

*"all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met* by the employee. Such compensation *may include, but is not limited to,* profit sharing, *fringe benefits,* or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state or federal law. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable." K.A.R. 49-20-1(d) (1983 Supp.); emphasis added.

It has been generally recognized that vacation pay is a type of wage. *Erickson v. General Motors Corporation,* 177 Kan. 90, 98-99, 276 P.2d 376 (1954). In determining whether the employer was liable for a statutory penalty for unpaid wages in *Benjamin v. Manpower, Inc. of Wichita,* 3 Kan.App.2d 657, 659-661, 600 P.2d 148 (1979), the court acknowledged first that vacation pay was "wages" under K.S.A. 44-313 (c); and then found, after analysis of the terms of the employment contract, Benjamin's vacation pay was "earned wages" under K.S.A. 44-315 (a). In *Benjamin,* the employment contract provided that after one year of employment, employees could elect to take either two weeks of paid vacation, *or* two weeks' pay.

In *Sweet v. Stormont Vail Regional Medical Center,* 231 Kan. 604, 647 P.2d 1274 (1982), vacation pay was again addressed. The employment contract in *Sweet* provided: "Any unused accumulated vacation . . . will be paid to an employee who resigns and gives the proper notice." 231 Kan. at 606. The claimant had resigned without giving notice.

The court upheld the notice requirement as a valid condition

precedent to the receipt of vacation pay and concluded that without the fulfillment of this condition, the vacation pay was not "earned wages." In reaching this decision, the court emphasized that the employment contract controls in determining employee rights which accrue under the contract, so long as the terms are not unreasonable or illegal. *Sweet*, 231 Kan. 604, Syl. ¶¶ 1, 3, 4. The court found nothing in Kansas law "which requires an employer to convert vacation time to a lump sum payment absent agreement in the employment contract." 231 Kan. at 610.

In the case at bar, there was no agreement to pay employees for unused vacation time. The vacation policy provided only for a paid vacation and warned: "There will be no accumulation of vacation." The claimant had no contractual right to vacation pay after his discharge.

Human Resources contends that continued employment was a condition limiting the claimant's right to vacation pay. It argues that, because the employer prevented the occurrence of the condition by firing the claimant, the employer cannot escape liability.

The prevention of condition theory cannot apply here. Continued employment was not a condition limiting a right to vacation pay because under *Sweet* the claimant had no contractual right whatsoever to vacation pay. When the claimant has no contractual right in the first instance, an analysis of conditions necessary to achieve that right becomes irrelevant.

Human Resources next contends that the trial court erred in reversing the hearing officer's award of statutory penalties under K.S.A. 44-315(b). The statute provides in part:

> "*If an employer knowingly fails to pay an employee wages* as required under subsection (a) of this section, *such employer shall be liable therefor and shall be additionally liable for damages* in the fixed amount of one percent (1%) of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the eighth day after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller, *except that such penalty shall apply only in the event of a willful violation.*" Emphasis added.

The Supreme Court has recently defined a "willful violation" under K.S.A. 44-315(b) as "one indicating a design, purpose, or intent on the part of a person to do wrong or to cause an injury to another." *Weinzirl v. The Wells Group, Inc.*, 234 Kan. 1016, Syl.

¶ 4, 677 P.2d 1004 (1984). See *Holder v. Kansas Steel Built, Inc.,* 224 Kan. 406, 411, 582 P.2d 244 (1978).

Here, the hearing officer found that, as the drafter of the vacation policy, the employer:

"knowingly applied an interpretation to such policy which is not contained therein and is in conflict with a proper reading of Respondent['s] policy which is a clear and unambiguous statement of the intent of the parties. Accordingly, Respondent is a knowing and willful violator for the purposes of this claim."

As we have discussed above, the employer's interpretation of the contract itself was correct. Further, the firing of the claimant is not enough to entitle claimant to statutory penalties under K.S.A. 44-315(b). There was no evidence that the employer discharged the claimant with the design, purpose or intent to injure him by depriving him of his vacation. Without this evidence, the claim must fail.

Affirmed.