(866 P.2d 1076)
No. 70,163

WATER DISTRICT NO. OF JOHNSON COUNTY, *Petitioner/Appellee,*
v. KANSAS WATER AUTHORITY, *Respondent/Appellee,* and
KANSAS NATURAL RESOURCE COUNCIL, *Intervenor/Appellant.*

Opinion filed January 14, 1994.

*John M. Simpson,* of John M. Simpson Law Office, of Fairway, for appellant.

*Wilson E. Speer* and *Michael J. Armstrong,* of Speer, Austin, Holliday & Zimmerman, of Olathe, for appellee Water District No. 1 of Johnson County.

*John W. Campbell,* deputy attorney general, and *Robert T. Stephan,* attorney general, for appellee Kansas Water Authority.

Before BRAZIL, P.J., GREEN, J., and GARY L. NAFZIGER, District Judge, assigned.

BRAZIL, J.: Water District No. 1 of Johnson County (the District), a large water utility, applied for a permit to transfer 23,000 acre feet of water per year from the Missouri River pursuant to the Water Transfers Act, K.S.A. 82a-1501 *et seq.* The District adopted a water conservation plan in conformity with the statutory requirements of the act. The Kansas Water Authority (KWA), the agency responsible for approving water transfers, approved the District's application, but conditioned its approval upon the District meeting conservation goals exceeding the guidelines issued by the Kansas Water Office. The District sought review of that decision in district court pursuant to the Act for Judicial Review and Civil Enforcement of Agency Actions. The trial court reversed in part the KWA's order relating to two amendments adopted by

the KWA, concluding that those amendments were not supported by substantial evidence. The Kansas Natural Resource Council (KNRC), a proper intervening party, has appealed. We affirm.

The District supplies water directly to approximately 280,000 individuals and business customers. The District holds water rights which allow it to divert and use a total of 58,830 acre feet of water per year. Anticipating that it would need more water to meet its future water requirements, in 1991 the District sought to secure the right to divert and use an additional 23,000 acre feet of water per year. A significant portion of the District's service area lies outside a 10-mile radius from the point of diversion. The proposed diversion constituted a water transfer as defined by the Water Transfers Act; therefore, in addition to obtaining a permit to appropriate water for beneficial use under the Kansas Appropriation of Water for Beneficial Use Act, K.S.A. 82a-701 *et seq.*, the District was required to apply for a permit to transfer water pursuant to the Water Transfers Act, K.S.A. 82a-1501 *et seq.* It is undisputed that the District followed the required procedures.

The District could not obtain approval of its water transfer application unless it adopted and implemented conservation plans and practices consistent with certain conservation guidelines issued by the Kansas Water Office. K.S.A. 82a-1503(b). Pursuant to this requirement, the Water Transfer Hearing Panel (Panel), the entity responsible for issuing the initial order, requested some modifications to the District's water conservation plan. The Panel found that the modified plan complied for the most part with the Municipal Water Conservation Plan Guidelines issued by the Kansas Water Office in November 1990. However, the Panel also found that the plan lacked a specific gallons of water per capita per day (gpcd) goal as contemplated by the guidelines. The guidelines recommend:

"A water utility, listed in the Municipal Water Use publications, whose current gpcd is *below* the regional average is probably already exercising some water conservation practices and may wish to simply list its current gpcd usage as its goal. A water utility, listed in the Municipal Water Use publications, whose current gpcd is *above* the regional average should choose a gpcd goal that is lower than its current gpcd usage and no water utility should choose a gpcd goal that is more than 25 percent above the region average, regardless of its current usage."

The District's gpcd usage for the years 1987 through 1990 was above the average gpcd usage for its region. It ranged from 28% above the regional average in 1987 to 10% above the regional average in 1990.

Using a formula which incorporated the 125% of the regional average gpcd usage contained in the guidelines, the Panel determined the District would require 81,820 acre feet of water in the year 2010 to meet its obligations. Based upon this calculation, the Panel determined the District needed the rights to an additional 22,990 acre feet of water on top of its current rights to 58,830 acre feet in order to meet its future needs. Consequently, if approved, the diversion of the requested 23,000 acre feet per year would just meet the District's future requirements.

After determining the District's reasonable future water requirements, the Panel concluded that its order reduced the District's gpcd usage to no more than 125% of the regional average as recommended by the guidelines. The Panel approved the District's application to transfer the full 23,000 acre feet, conditioned upon the District adopting a variable gpcd goal consistent with the guidelines.

The KWA took no additional evidence before rendering its final order. It relied exclusively on the arguments of counsel and the extensive record developed before the Panel. In general, the KWA adopted the findings and conclusions contained in the Panel's initial order, including the calculation of the District's reasonable future water requirements. It added in conclusion 20, however, the following: "The KWA has determined the amount of water that is most desirable should be an amount that is no larger than 100 percent of the Region 8 large municipalities GPCD average in order to promote water conservation." Based upon this conclusion, the KWA approved the transfer but required the District to adopt a gpcd goal of no more than 100% of the regional average.

In the district court, the District argued and the trial court agreed that the final order which amended the initial order by requiring a stricter conservation plan than required by the conservation guidelines was unsupported by substantial evidence. The District also contends the KWA acted beyond its jurisdiction

by requiring the District to meet conservation goals exceeding those recommended by the guidelines.

The KNRC argues that the KWA acted within its jurisdiction and that its decision was supported by substantial evidence.

In reviewing a district court's judgment reviewing an agency action, an appellate court must first determine whether the district court observed the requirements and restrictions placed upon it and then make the same review of the administrative agency's action as does the district court. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 387, 673 P.2d 1126 (1983); see *Peck v. University Residence Committee of Kansas State Univ.*, 248 Kan. 450, 455-56, 807 P.2d 652 (1991). Neither the district court nor an appellate court may substitute its judgment for that of the administrative agency. *Southwest Kan. Royalty Owners Ass'n v. Kansas Corporation Comm'n*, 244 Kan. 157, 165, 769 P.2d 1 (1989).

Review of the final order under the Water Transfers Act is controlled by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq*. K.S.A. 82a-1505(a). The scope of review under that act is contained in K.S.A. 77-621(c):

"The court shall grant relief only if it determines any one or more of the following:

(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

(3) the agency has not decided an issue requiring resolution;

(4) the agency has erroneously interpreted or applied the law;

(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious."

When reviewing agency action pursuant to K.S.A. 77-621(c), the reviewing court must take into account the rule of harmless error.

*Southwest Kan. Royalty Owners Ass'n*, 244 Kan. at 165. "A rebuttable presumption of validity attaches to all actions of an administrative agency and the burden of proving arbitrary and capricious conduct lies with the party challenging the agency's action." *Kaufman v. Kansas Dept. of SRS*, 248 Kan. 951, 961, 811 P.2d 876 (1991).

The District alleged in its petition for judicial review that the KWA's final order should be reversed based upon K.S.A. 77-621(c)(2), (4), (7), and (8).

The Panel was allowed to approve the transfer of a smaller amount of water than requested subject to such terms and conditions as it deemed necessary for the protection of the public interest of the state as a whole. See K.S.A. 82a-1504(a). KNRC argues that the KWA, as the designated agency head, exercised all the decision-making power that the Panel had upon review and that it had the authority under K.S.A. 82a-1504(a) to approve a smaller amount of water than the District requested. See K.S.A. 77-527(d). KNRC argues this discretionary power included the power to require the District to adopt a lower gpcd goal than required by the conservation guidelines.

Assuming for the sake of argument that the KWA had the authority to impose stricter conservation goals than required by the Municipal Water Conservation Plan Guidelines, it was required by statute to provide an explanation for that decision. Applications under the Water Transfers Act are covered by the Kansas Administrative Procedure Act, K.S.A. 77-501 *et seq.* K.S.A. 82a-1503(c).

K.S.A. 77-526(c) provides: "A final order or initial order shall include, separately stated, findings of fact, conclusions of law and policy reasons for the decision if it is an exercise of the state agency's discretion, for all aspects of the order."

"An administrative agency must assume the responsibility of expressing the basic facts on which it relies with sufficient specificity to convey to the parties, as well as to the court, an adequate statement of the facts which persuaded the agency to arrive at its decision. Thus, there must be findings on all applicable standards which govern the agency's determination, and the findings must be expressed in language sufficiently definite and certain to constitute a valid basis for the order, otherwise the order cannot stand. *Kansas Public Service Co. v. State Corporation Commission*, 199 Kan. 736, 744-745, 433 P.2d 572 (1967). Findings of ultimate fact expressed in the

language of the applicable statute are not enough in the absence of basic findings to support them. *Cities Service Gas Co. v. State Corporation Commission*, 201 Kan. 223, 230, 440 P.2d 660 (1968)." *Blue Cross & Blue Shield v. Bell*, 227 Kan. 426, 433-34, 607 P.2d 498 (1980).

Moreover, lack of expressed findings of fact may not be supplied by implication, and, where they are required, courts will not search the record in order to ascertain whether there is evidence from which the ultimate findings could be made. *Kansas Public Service Co. v. State Corporation Commission*, 199 Kan. 736, 744, 433 P.2d 572 (1967).

Federal courts have interpreted a substantially identical requirement found in the Federal Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A) (1988). Under the federal rule, an agency is not required to furnish detailed reasons for its decision; however, the decision must be sufficiently clear so that a court is not required to speculate as to its basis. *Lockert v. U.S. Dept. of Labor*, 867 F.2d 513, 517 (9th Cir. 1989).

The need for an agency to articulate reasons for discretionary decisions, or to make specific findings and conclusions from which a court could reasonably infer the basis for a discretionary decision, is amply demonstrated by the KWA's order. Absent a reasoned explanation for conclusion 20, the order is arbitrary and unreasonable.

The KWA adopted the findings and conclusions of the Panel in their entirety. Certainly, the KWA had the authority to reach different conclusions based upon the same findings. The problem in this case is that the KWA adopted the same conclusions reached by the Panel. Conclusion 20, which is a significant amendment to the Panel's initial findings and conclusions and the sole basis for the amendment to the initial order, is inconsistent with the conclusions which precede it.

Of the 29 specific conclusions contained in the final order, 9 rely on or were derived using the Municipal Water Conservation Plan Guidelines. The gpcd goal of using no more than 125% of the regional average was an integral component of the formula used to determine the District's reasonable future water requirements.

It was inconsistent and patently arbitrary absent some explanation to use the guidelines to determine the District's reasonable

future water requirements and then reject the guideline recommendations when formulating a gpcd goal for the District. The KNRC argues the KWA's order effectively reduced the amount of water the District would be able to use under the transfer permit. If this is the case, the effect of the KWA's order is to restrict the amount of water the District can use in the future to an amount that is insufficient, by the KWA's own calculations, to meet the District's reasonable future water requirements. Again, absent some explanation for conclusion 20, it is unreasonable. If the KWA felt the District did not need all the water requested, it should have made a specific finding or conclusion explaining its decision. Inconsistency within an administrative decision may render it arbitrary. *Southwest Kan. Royalty Owners Ass'n*, 244 Kan. at 169.

The KWA believed a stricter gpcd goal was desirable in order to "promote water conservation." Prior to voting on the final order, certain members of the KWA spoke eloquently on the need for water conservation practices in this state. It is beyond debate that water conservation is necessary in this state and that it serves to protect the public interest. However, conclusion 20 is not a sufficient explanation or justification for the KWA's amendment to the Panel's initial order.

The legislature believed that a conservation plan consistent with the water office guidelines was sufficient to promote water conservation in the state of Kansas. K.S.A. 82a-1503(b). While the KWA may have had the authority to impose stricter gpcd goals than required by the guidelines in a particular case, it was incumbent upon the KWA to provide a reasoned explanation for that decision.

This was especially important here because the KWA is responsible for approving the guidelines prior to adoption by the director of the water office. K.S.A. 74-2622(c)(11). Apparently, the KWA believed the gpcd goals recommended in the guidelines were sufficient to promote water conservation when they were adopted.

It is important for an agency to provide a basis for a decision which appears to deviate from a policy which it had adopted earlier. This is especially important when the need for deviation in a particular case is not so obvious as to remove the need for

explanation. *Garrett v. F.C.C.*, 513 F.2d 1056, 1060 (D.C. Cir. 1975). The Panel and the KWA determined that the proposed transfer of 23,000 acre feet from the Missouri River would not reduce the amount of water required to meet the present or any reasonably foreseeable future beneficial use of water by present or future users in the area from which the water was to be taken for transfer. Here, the decision to impose stricter conservation goals than required by the guidelines was not so obvious as to remove the need for explanation.

The guidelines are not regulations and do not have the force and effect of law. It is only reasonable, however, that the agency charged with final approval of those guidelines provide a reason for deviating from its own recommendations in a particular case. The guidelines are intended to assist municipal water users when preparing conservation plans and to provide guidance to state agencies that review and approve water conservation plans. Municipal users should be able to rely on those guidelines in the absence of some explanation why they should not.

"Administrative decisions of less than ideal clarity will be upheld where the path of decision is reasonably discernible." *Coggins v. Public Employees Relations Board*, 2 Kan. App. 2d 416, 420, 581 P.2d 817, *rev. denied* 225 Kan. 843 (1978). The development and implementation of a water conservation plan by a large water utility like the District is a highly technical and complex process, as was the determination that the District's plan was consistent with the water office guidelines. The impact of imposing the gpcd goal of no more than 100% of the regional average is significant, especially in light of the calculation of the District's future water requirements which was based upon a gpcd of 125% of the regional average in a drought year.

The scope of review over administrative decisions is limited, and courts are entitled to have the benefits of the agency's expertise before ruling on important questions of law and policy. *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991). " '[It] is "a simple but fundamental rule of administrative law . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must adjudge the propriety of such action solely by the grounds invoked by the agency." ' " *Garrett*, 513 F.2d at 1060.

Where none is provided, courts are not at liberty to speculate on the basis of an agency's order. *Hyatt Corp*, 939 F.2d at 367.

Neither the trial court nor this court possess the technical background or expertise to fashion a municipal water conservation plan or to determine the reasonableness of a certain gpcd goal. The trial court and this court are entitled to know why the Panel's initial order requiring the District to comply with conservation guidelines approved by the KWA did not promote conservation. This explanation should have entailed more than the statement found in conclusion 20. The KWA should have provided the same specific and technological support for conclusion 20 as the Panel did to determine the District's conservation plan was consistent with the municipal water use conservation guidelines and to calculate the District's reasonable future water requirements.

The trial court was properly concerned with the lack of support for the final order. Because no explanation was provided for conclusion 20 and the single amendment to the Panel's initial order, it is impossible to determine whether they were supported by substantial competent evidence. However, the reasons given by a trial court for its decision are immaterial so long as its ruling was correct for any reason. *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 245, 777 P.2d 811 (1989). The better rationale for reversing the KWA's order is that on its face it is arbitrary and unreasonable. The failure to comply with K.S.A. 77-526(c) was not harmless error in this case. K.S.A. 77-621(c)(5) would also apply here because the KWA failed to follow the procedure prescribed in the Administrative Procedure Act.

Normally, where an agency fails to provide a sufficient explanation for a decision, remand is the appropriate remedy. K.S.A. 77-622(b). However, the legislature has divested the KWA of all power with regard to water transfers and repealed the former provisions of the act. L. 1993, ch. 219, §§ 9, 10. The KWA requests that, if any further administrative proceedings are required, this court remand for proceedings under the revised water transfer act. However, under the new act, the district's proposed diversion of 23,000 acre feet over a distance of 10 miles is no longer defined as a water transfer, thus the act would no longer apply. The new act defines a water transfer as the diversion of

2,000 acre feet or more to a point of use outside a 35-mile radius from the point of diversion. L. 1993, ch. 219, § 1.

We affirm the trial court's order reversing in part and affirming in part the KWA's final order. The gpcd goal set by the KWA should be stricken and the gpcd goal contained in the Panel's initial order reinstated.

Affirmed.