(13 P.3d 358)
No. 84,383

DILLARD DEPARTMENT STORES, INC., *Appellee*, v. STATE OF
KANSAS, DEPARTMENT OF HUMAN RESOURCES, *Appellant*.

Opinion filed December 1, 2000.

*Claude Lee*, of Kansas Department of Human Resources, for the appellant.

*Daniel B. Boatright*, of Spencer, Fane, Britt & Browne L.L.P., of Overland Park, for the appellee.

Before PIERRON, P.J., BEIER, J., and C. FRED LORENTZ, District Judge, assigned.

LORENTZ, J.: The Kansas Department of Human Resources (KDHR) appeals the decision of the district court overturning its order for Dillard Department Stores, Inc., to pay a former employee for earned vacation days following the employee's involuntary termination.

Barrett Cook was employed by Dillard Department Stores, Inc. (Dillard's) until he was involuntarily terminated on October 11, 1996. At the time of his termination, Cook had accrued 58 hours of vacation time. Dillard's written employee benefits policy provided for a cash payment of accrued vacation hours upon termination as follows:

"Vacation is a benefit and not an earned wage. 'Accrued Vacation' is only considered an earned benefit, and payable upon termination, if the associate terminates due to death, retirement, or voluntarily terminates employment by (1) providing a written two weeks notice on the Company's NOTICE OF RESIGNATION form to the Operating Location Manager's office (or Senior Executive on Duty) prior to termination, and (2) working all hours scheduled during the two week period, or shorter period as determined by management. Associates involuntarily terminated for cause are not eligible for vacation pay."

Because Cook was involuntarily terminated, Dillard's refused to pay him for his accrued vacation time. Cook subsequently filed a wage claim against Dillard's with KDHR. KDHR determined that Cook had been terminated without cause and was, therefore, entitled to payment of his accrued vacation time plus interest and a penalty for Dillard's willful failure to pay, and also ordered payment of some unpaid commissions. KDHR then issued its initial order directing Dillard's to pay Cook accordingly. Upon review, the Secretary of KDHR upheld the order, making it the agency's final order. Dillard's appealed that portion of the order relating to vacation pay and associated interest and penalties to the district court.

The district court ruled that under the precedents established by *Sweet v. Stormont Vail Regional Medical Center,* 231 Kan. 604, 647 P.2d 1274 (1982), and *Mid America Aerospace, Inc. v. Department of Human Resources,* 10 Kan. App. 2d 144, 694 P.2d 1321, *rev. denied* 237 Kan. 887 (1985), KDHR had made an erroneous conclusion of law and vacated its order.

Additional facts will be set out as necessary.

KDHR contends the district court erred in ruling that Cook was not entitled to the payment for accrued vacation.

In examining a district court's review of an administrative agency's action, "an appellate court must first determine whether the district court observed the requirements and restrictions placed upon it and then make the same review of the administrative agency's action as does the district court." *Water District No. 1 v. Kansas Water Authority,* 19 Kan. App. 2d 236, 240, 866 P.2d 1076 (1994). The district court's review is governed by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* The court may consider only the grounds for relief set forth in K.S.A. 77-621(c). *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs,* 256 Kan. 426, 431, 885 P.2d 1233 (1994). "The district court must presume the agency's findings valid. It may not set aside an agency order merely because the district court would have reached a different conclusion if it had been the trier of fact." 256 Kan. at 431. The court may grant relief only if the evidence shows the agency's determination "is so wide of the mark as to be outside the realm of fair debate." *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* 217 Kan. 604, 617, 538 P.2d 702 (1975).

The conditions under which a court may grant relief when an agency action is challenged are defined by K.S.A. 77-621(c). Dillard's sought relief in the district court under K.S.A. 77-621(c)(4), which authorizes judicial relief if "the agency has erroneously interpreted or applied the law," and K.S.A. 77-621(c)(7), which authorizes relief if "the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole."

The only pertinent issue of fact that is disputed is whether Cook was terminated for cause. The burden of proving cause logically falls on Dillard's. See *Farmland Foods, Inc. v. Abendroth*, 225 Kan. 742, Syl. ¶ 1, 594 P.2d 184 (1979) (holding employer has burden of proving employee misconduct by a preponderance of the evidence when disputing a claim for unemployment compensation). In proceedings before KDHR, Dillard's stated that Cook was terminated for insubordination, but provided no further evidence or explanation.

KDHR's finding that Cook was terminated without cause necessarily establishes that Dillard's failed to meet its burden of proving misconduct on Cook's part. "[A] negative finding that a party did not carry its requisite burden of proof will not be disturbed on appeal absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice." *Thomason v. Stout*, 267 Kan. 234, 238, 978 P.2d 918 (1999). The district court concluded that whether Cook was terminated with or without cause was immaterial and did not address that issue. However, that issue is material to KDHR's decision and it is material to determining Cook's rights under Dillard's policy. The failure of the district court to address this issue of fact does not require a remand as the case was decided upon documentary evidence and the district court had no particular opportunity to evaluate the credibility of witnesses or assess physical evidence not contained in the record. In such a situation, a reviewing court has the same opportunity to examine and consider the evidence as did the court below and it can make its own de novo determination. See *Garvey Elevators, Inc. v. Kansas Human Rights Comm'n*, 265 Kan. 484, 492, 961 P.2d 696 (1998).

A thorough review of the record reveals nothing to indicate an arbitrary disregard of undisputed evidence or bias, passion, or prejudice on the part of KDHR. Dillard's presents no argument to the contrary, and, accordingly, KDHR's finding that Cook was terminated without cause must stand as fact.

The next question is whether KDHR's ultimate ruling was based on an erroneous interpretation of the law. KDHR correctly noted that under Kansas law, cash payment for accrued vacation time is

not required unless provided for in the employer's policies. See *Sweet,* 231 Kan. at 610. However, KDHR found that Dillard's policies did provide for cash payment of vacation time at termination and that under those policies, Cook was entitled to such payment because he was terminated without cause. KDHR further found that the accrued vacation was earned wages and ordered the payment of interest and a penalty for willful nonpayment under K.S.A. 1999 Supp. 44-315.

K.S.A. 1999 Supp. 44-315(a) requires employers to pay earned wages to employees who have been fired. K.S.A. 44-313(c) defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions." K.A.R. 49-20-1(d) defines "or other basis" as used in the foregoing statute to include:

"all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Such compensation may include, but is not limited to, profit sharing, fringe benefits, or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state or federal law."

Vacation pay has been recognized by the courts as a type of wage. *Mid America,* 10 Kan. App. 2d at 146. KDHR's determination that Cook's accrued vacation time constituted wages under K.A.R. 49-20-1(d) and K.S.A. 44-313(c) was correct and was recognized as correct by the district court. Where KDHR and the district court diverged was on whether Cook's vacation pay constituted *earned wages* under K.S.A. 1999 Supp. 44-315(a).

The resolution of this issue is controlled by the employment contract and employer policies. *Sweet,* 231 Kan. 604, Syl. ¶¶ 1,3, and 4; *Mid America,* 10 Kan. App. 2d at 147. The district court did not truly address Dillard's vacation payment policy, but rather based its decision solely on the general principles set down in *Sweet* and *Mid America.* In both of those cases, the courts held terminated employees were not entitled to vacation pay. However, neither case held terminated employees are never entitled to pay for unused vacation, but that the issue must be decided based on the employment agreement and company policies in any given case.

231 Kan. at 611; 10 Kan. App. 2d at 147. Moreover, both cases are factually distinguishable from the present case.

The *Mid America* case is not directly on point because its holding was based on the fact that there was no agreement or policy in place to pay employees for unused vacation time. 10 Kan. App. 2d at 147. In this case, Dillard's clearly has a policy of paying some terminated employees for accrued vacation time. The issue hinges on the interpretation of that policy.

*Sweet*, although very similar to the case at bar, is distinguishable because of two important differences. First, in *Sweet*, the employer's policy did not contain any provisions concerning employees involuntarily terminated. Second, *Sweet* involved an employee who voluntarily quit without notice, rather than an employee terminated without cause.

The employer's vacation policy at issue in *Sweet* reads: "Employees resigning from the hospital are expected to give their supervisor 2 weeks' written notice . . . Any unused accumulated vacation that does not exceed 1-½ times an employee's annual vacation benefit will be paid to an employee who resigns and gives the proper notice." 231 Kan. at 606.

The policy above differs from Dillard's policy in that it specifies only terms of inclusion and none of exclusion. It imposes clear and specific conditions for the lump sum payment of unused vacation. By obvious implication, failure to meet the specific conditions excludes one from receiving vacation pay. It clearly excludes those who resign voluntarily without 2 weeks' notice and those who are involuntarily terminated, with or without cause. Dillard's policy, on the other hand, as KDHR points out in its brief, does not impose clear conditions, but is ambiguous and subject to interpretation. It now falls to this court to interpret Dillard's policy.

The legal effect of a written instrument is a question of law. On appeal, a written instrument may be construed and its legal effect determined by the appellate court regardless of the construction made by the district court. *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515 (1998). At the outset, certain established rules of interpretation must be kept in mind:

" 'There is an elementary rule of law that where one party to a contract is privileged to set down in writing the terms to which another party is to give assent, and a controversy arises as to their meaning, the contract should be construed strictly against the writer and liberally toward the other party.' " *Francis v. Shawnee Mission Rural High School*, 161 Kan. 634, 639, 170 P.2d 807 (1946) (quoting *Bankers Mortgage Co. v. Dole*, 130 Kan. 367, 286 Pac. 258 [1930]).

Also, "a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995); see Restatement (Second) of Contracts § 203(a) (1979).

Dillard's policy clearly states that employees who terminate because of death, retirement, or voluntary resignation with 2 weeks' notice are entitled to vacation pay. The policy also clearly states that employees involuntarily terminated for cause are ineligible for vacation pay. Thus, the policy contains express provisions of both inclusion and exclusion. The policy does not, however, specifically address employees who voluntarily resign without giving 2 weeks' notice or employees who are involuntarily terminated without cause.

One way to determine the rights of these latter classes of terminated employees is by application of the maxim *expressio unius est exclusio alterius*—the expression of one thing implies the exclusion of another. By expressly declaring that employees who voluntarily terminate with 2 weeks' notice are entitled to vacation pay, Dillard's policy implicitly excludes from receiving vacation pay those employees who voluntarily resign without giving 2 weeks' notice. In fact, if the policy ended there, as did the policy in *Sweet*, the logical implication would be that all employees not expressly declared eligible would be ineligible. Thus, employees involuntarily terminated, with or without cause, would be ineligible because there was no mention of them.

Dillard's policy, however, goes a step further. It expressly mentions involuntarily terminated employees. It declares that employees involuntarily terminated for cause are not eligible for vacation pay. This additional term, specifically addressing employees involuntarily terminated for cause, by implication excludes from its op-

eration those employees involuntarily terminated without cause. It would, therefore, be reasonable to conclude that employees terminated without cause, such as Cook, are eligible to receive payment for their accrued vacation pay. That is the interpretation adopted by KDHR.

Alternatively, one could take the view urged by Dillard's and adopted by the district court and interpret Dillard's policy to place specific conditions precedent on the right to receive vacation pay on termination. Under this view, the only conditions under which a terminated employee would be eligible for vacation pay would be those specifically spelled out in the policy—death, retirement, or voluntary termination with 2 weeks' notice. Termination without meeting those conditions precedent would preclude an employee from receiving vacation pay. That was the situation and holding in *Sweet*.

The latter interpretation minimizes the factual differences between the two cases and ignores the previously mentioned rules of interpretation. Adopting Dillard's interpretation would render superfluous the term specifying that employees terminated without cause are not eligible to receive vacation pay. It would simply be without any meaning or effect. This violates the rule set out in the Restatement (Second) of Contracts § 203(a) and recognized by the United States Supreme Court in *Mastrobuono*, 514 U.S. at 63, that an interpretation giving reasonable, effective meaning to all terms is preferred to one that leaves some terms with no effect. KDHR's interpretation, on the other hand, does give effect to all the terms of Dillard's policy—limiting application of the conditions precedent to voluntary terminations and making it clear that those involuntarily terminated for cause are ineligible.

The fact that Dillard's wrote the policy also weighs in favor of KDHR's interpretation. The terms of the policy are not crystal clear; they are open to different, yet reasonable interpretations. It is a common-law rule of interpretation that in such situations, a court should construe the terms of a writing against the drafter. See *Mastrobuono*, 514 U.S. at 63; *Francis*, 161 Kan. at 639. The purpose for this rule "is to protect the party who did not choose the language from an unintended or unfair result." *Mastrobuono*,

514 U.S. at 63. In this case, Dillard's chose the language and chose poorly. Giving Dillard's the benefit of its own interpretation would subject Cook to an unfair result. Cook would lose his vacation pay, which under the policy he fully expected to receive, after being terminated by Dillard's without cause.

Under the policy as written, it was reasonable for Cook to believe that the conditions precedent to receiving vacation pay applied only in cases of voluntary termination. Thus, it was reasonable for Cook to expect to be paid for his vacation time so long as he neither quit without the required notice nor committed acts of misconduct justifying his involuntary termination for cause.

*Sweet* and *Mid America* are distinguishable from the case now before us and it was error for the district court to rely on those cases in vacating KDHR's order.

Reversed with directions to reinstate the order of KDHR.

Reversed.