NOT DESIGNATED FOR PUBLICATION

No. 125,567

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RON RESTUM and AMY RESTUM,
*Appellants*,

v.

HAWTHORNE MASTER HOMEOWNERS' ASSOCIATION,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Oral argument held October 17, 2023. Opinion filed May 24, 2024. Reversed and remanded with directions.

*N. Russell Hazlewood*, of Graybill & Hazlewood, LLC, of Wichita, for appellants.

*Danielle M. Uzelac, John G. Schultz,* and *Derek G. Johannsen*, of Franke, Schultz & Mullen, P.C., of Kansas City, Missouri, for appellee.

Before WARNER, P.J., ATCHESON, J., and MARY E. CHRISTOPHER, S.J.

WARNER, J.: This case involves a dispute between the owners of a home and their homeowners' association about who must maintain a privacy fence in Wichita. The district court granted summary judgment to the association, interpreting the contract governing the development to state that the homeowners were responsible for maintaining the fence, not the association. The homeowners appeal that decision. After reviewing the declaration, we agree with the homeowners that the association is contractually obligated to maintain and repair the fence. We thus reverse the district court's decision and remand for entry of judgment in the homeowners' favor.

FACTUAL AND PROCEDURAL BACKGROUND

The Hawthorne neighborhood development is a residential common interest community in Wichita. As the Hawthorne property was being developed—after the developer had built the houses on the eastern side of the neighborhood but before it sold the individual lots—the developer installed a wooden privacy fence along the eastern side of the property. This fence divided the property from an abutting neighborhood and shielded it from view. The fence is 8 feet tall and 2,500 feet long, running across several individual lots through a drainage and utility easement. The fence requires regular maintenance.

The Hawthorne neighborhood is governed by the Hawthorne Master Homeowners' Association, with the responsibilities of the Association and the homeowners set forth in the Hawthorne Master Declaration of Covenants, Conditions, Restrictions, Easements and Disclosures (the Declaration). The Declaration was originally executed and filed in 2003. Though it has been amended several times over the course of the last two decades, the provisions relevant to this case have remained unchanged since that time.

By the summer of 2018, some boards in the privacy fence had become loose or were missing. Several homeowners who lived near the fence asked the Association to repair it, but the Association refused, disclaiming any responsibility for its upkeep. Ron and Amy Restum, homeowners on the eastern edge of the Hawthorne neighborhood, filed a petition for a declaratory judgment against the Association, claiming that Section 6.1(B) of the Declaration stated that the Association was responsible for maintaining and repairing the privacy fence. That section reads:

> "The Association shall maintain, water, fertilize, mow and keep clean the portions of the Hawthorne Common Area which are to be maintained by it hereunder and the portions of the arterial public streets adjacent to the perimeter of the Property. It

2

further shall maintain, repair and/or replace the decorative entrance treatments, fence(s) and walls erected and installed by Developer or the Association."

The Restums eventually moved for summary judgment based on this language. The Association countered that the language of Section 6.1(B), when read in context, only related to fences within the Hawthorne Common Area and did not apply to fences on individual property. The district court agreed with the Association, finding that Section 6.1(B) did not require the Association to repair the privacy fence, and denied the Restums' motion.

In light of the district court's interpretation of the Declaration, the parties agreed there was no need to go forward with a trial. They jointly submitted a Journal Entry of Judgment, which—consistent with the court's previous ruling—granted summary judgment to the Association, even though the Association had not formally moved for summary judgment. This journal entry stated the district court was granting judgment "sua sponte" to the Association because

- the Declaration "does not obligate [the Association] to maintain, repair and replace the Fence even as those activities become reasonably necessary";

- the Declaration "only obligates [the Association] to maintain, replace or repair the Fence located in the Common Areas"; and

- "the fence located on [the Restums'] lot is not a Common Area."

The Restums appeal this judgment.

DISCUSSION

The Restums challenge the district court's judgment in two ways. They assert the district court's ruling relied on an incorrect interpretation of the Declaration—that the Association was not responsible for maintaining the fence. They also challenge the procedure by which judgment was entered, as the Association never filed its own motion for summary judgment before the district court granted that relief. For the reasons we discuss here, we are unpersuaded by the Restums' procedural claim, but we agree that the judgment rested on an erroneous interpretation of the Declaration and thus reverse the district court's decision.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." K.S.A. 2023 Supp. 60-256(c)(2). In ruling on a motion for summary judgment, the district court views the evidence in the light most favorable to the opposing party, giving that party the benefit of every reasonable inference drawn from the evidentiary record. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). Because summary judgment is, by definition, judgment as a matter of law based on undisputed facts, an appellate court is in the same posture as the district court when reviewing the parties' filings and gives no deference to the district court's rationale and ruling. *Russell v. Treanor Investments L.L.C.*, 311 Kan. 675, 680, 466 P.3d 481 (2020).

For similar reasons, appellate courts also have unlimited review over the interpretation and legal effects of a written contract. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018). When interpreting a contract, such as the Declaration here, we strive to ascertain the intention of the parties and give effect to that intent. *Russell*, 311 Kan. at 680. Practically speaking, we determine the parties' intent through the written text

4

and interpret that language in light of the contract as a whole, rather than in isolation. *City of Arkansas City v. Bruton*, 284 Kan. 815, 832-33, 166 P.3d 992 (2007); *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 271, 777 P.2d 1259 (1989), *cert. denied* 493 U.S. 1036 (1990).

"'If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Russell*, 311 Kan. at 680. This means we simply enforce the plain language of a contract as it is written unless the text reasonably supports "two or more possible meanings." *Zukel v. Great West Managers, LLC*, 31 Kan. App. 2d 1098, Syl. ¶ 3, 78 P.3d 480 (2003), *rev. denied* 277 Kan. 928 (2004). Only when faced with a true ambiguity—when we are left "genuinely uncertain which one of two or more meanings is the proper meaning"—do we employ other tools of construction or consider other evidence of the parties' intent. *American Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, Syl. ¶ 4, 179 P.3d 1104 (2008); see *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

With these principles in mind, we turn to the parties' arguments. As we have noted, the Restums bring both substantive and procedural challenges to the district court's judgment. From a procedural standpoint, they claim the court erred when it granted summary judgment to the Association without first requiring the Association to file a motion requesting that relief and an accompanying memorandum under Supreme Court Rule 141 (2024 Kan. S. Ct. R. at 220). They point to the language in the district court's journal entry of judgment—which the parties submitted—stating that the court was granting summary judgment "sua sponte."

In general, Kansas courts require parties to follow the summary-judgment procedures set forth in K.S.A. 60-256 and Rule 141. These procedures help the court to ferret out any factual disputes and ensure judgment without a trial is appropriate. See

*Acord v. Porter*, 58 Kan. App. 2d 747, 757, 475 P.3d 665 (2020) (discussing summary-judgment procedures), *rev. denied* 312 Kan. 890 (2021). The Restums submitted a motion and supporting memorandum in compliance with these provisions when they initially requested summary judgment, but the Association did not.

Nevertheless, when the district court denied the Restums' summary-judgment motion, it essentially denied the Restums' request for a declaratory judgment. The parties then agreed that no further steps would be necessary (or fruitful) and thus submitted a proposed journal entry. Under these unusual circumstances, we find no fault in the manner in which the court rendered its decision. The question that remains is whether that decision was based on a correct interpretation of the Declaration. We turn to that question now.

The parties agree that the powers, duties, and rights of the Association are defined in Article VI of the Declaration. As we have indicated, the central point of contention is the proper interpretation of the second sentence in Section 6.1(B):

> "The Association shall maintain, water, fertilize, mow and keep clean the portions of the Hawthorne Common Area which are to be maintained by it hereunder and the portions of the arterial public streets adjacent to the perimeter of the Property. *It further shall maintain, repair and/or replace the decorative entrance treatments, fence(s) and walls erected and installed by Developer or the Association.*" (Emphasis added.)

The Restums argue that this second sentence unambiguously states that the Association is responsible for maintaining and repairing the privacy fence on their property, as that fence was originally installed by the developer. The Association argues—and the district court found—that this seemingly straightforward second sentence is ambiguous in two ways. First, the Association asserts that Section 6.1 as a whole only applies to the Hawthorne Common Area, and so Section 6.1(B) must be read in that context. And second, it reiterates the district court's construction that Section

6

6.1(B) only applies to "decorative entrance . . . fence(s)" in the Common Area, not the privacy fence that crosses the Restums' property. We do not find either argument persuasive.

To start, we disagree with the Association and the district court that the Association's responsibilities in Article VI are limited to the Hawthorne Common Area. Our reading of the Declaration shows that while many provisions in that article relate to the Common Area, others do not. For example, Section 6.1(B) recognizes that the Association must mow and care for not only the Common Area, but also "the portions of the arterial public streets adjacent to the Property." Section 6.1(F) empowers the Association to establish rules about the maintenance, use, and beautification of "the Property" generally, including the individual owners' lots *and* the Hawthorne Common Area. Section 6.1(H) allows the Association to contract with a trash removal service to serve all owners' lots, not merely the Common Area. Under Section 6.1(I), the Association can enforce these rules by fining owners of noncompliant lots.

The Association's interpretation of Section 6.1(B) would require us to ignore these provisions and restrict Section 6.1(B)'s reach. But that would alter the meaning and scope of a provision that makes sense as it is currently written—steps we are loath to take. See *Central Kansas Medical Center v. Hatesohl*, 308 Kan. 992, 1002, 425 P.3d 1253 (2018). Instead, we find that the most natural reading of Section 6.1(B)—albeit the reading disfavored by the Association—imposes no spacial limitation on the Association's duty to maintain and repair "treatments, fence(s), and walls" that were installed by the developer or the Association. That is, regardless of the fence's location, Section 6.1(B) requires the Association to maintain and repair a fence installed by the developer.

Even so, the Association argues the Declaration is ambiguous because, as the district court found, the phrase "decorative entrance" in the second sentence of Section 6.1(B) can reasonably be understood to modify "treatments," "fence(s),'" and "walls." The

Association asserts that there are no decorative entrance fences on individual lots and that decorative entrance fences would only exist in common areas. If construed in this way, the second sentence of Section 6.1(B) would only clarify the responsibilities in the first sentence. In other words, if "decorative entrance" is read to modify "fence(s)," the contract can be interpreted to limit the Association's responsibility to fences within the Hawthorne Common Area and exclude the privacy fence on the Restums' property.

Thus, the Association argues that the language of Section 6.1(B) supports two reasonable interpretations: (1) the Restums' interpretation—that the Association is responsible for maintaining and repairing any fences that were installed by the developer; and (2) the Association's interpretation—that it is only responsible for maintaining and repairing decorative entrance fences within the Hawthorne Common Area. The Association asks us to adopt the second interpretation, as the district court did when granting summary judgment in favor of the Association.

As we have indicated, we question whether the Declaration is truly ambiguous. Section 6.1(B) of the Declaration states that the Association "shall maintain [and] repair . . . [the] fence(s) . . . erected and installed by Developer." The Association's offered interpretation and the district court's even more complex construction appear to read unnecessary complications into the Declaration's language. A contract is not ambiguous merely because two groups disagree about its meaning. Rather, courts should give words their ordinary meanings and not strain to find ambiguity where, in common sense, there is none. *Greer v. Eby*, 309 Kan. 182, 192-93, 432 P.3d 1001 (2019). Here, the Declaration plainly states that the Association must maintain fences installed by the developer.

But even if we were to agree that Section 6.1(B) is ambiguous—that both parties' interpretations of that language are plausible and reasonable—the Association would not prevail for at least two reasons.

8

*First*, Kansas law requires us to construe any ambiguity in an adhesion contract, like the Declaration here, against its drafter. See *Liggatt v. Employers Mut. Cas. Co*., 273 Kan. 915, 921, 46 P.3d 1120 (2002); see also Boyack, *Common Interest Community Covenants and the Freedom of Contract Myth*, 22 J.L. & Pol'y 767, 770 (2014) ("The covenants [in common interest communities] are perpetual, non-negotiable contracts of adhesion, bundled with one of the most personal, expensive, and complicated purchases an individual will ever make—the purchase of a home."). "The purpose for this rule 'is to protect the party who did not choose the language from an unintended or unfair result.'" *Dillard Dept. Stores, Inc. v. Kansas Dept. of Human Resources*, 28 Kan. App. 2d 229, 236-37, 13 P.3d 358 (2000) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 63, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995)]); see Restatement (Second) of Contracts § 203(a) (1979).

Although the Association did not draft the Declaration, only the Association and the developer can amend its language. See Declaration, Section 11.10. Other courts have found that, under these circumstances, the homeowners' association stands in the shoes of the developer for purposes of interpreting contractual language in restrictive covenants. See, e.g., *Barry Harbor Homes Ass'n v. Ortega*, 105 S.W.3d 903, 908-09 (Mo. Ct. App. 2003) (explaining why an ambiguity in a restrictive covenant would be construed against Barry Harbor Homes Association). Thus, to the extent there is any dispute between two reasonable interpretations of the Declaration's language, we resolve those ambiguities against the Association. Here, that means any ambiguity is resolved in favor of a finding that the Association must maintain the privacy fence.

*Second*, the Restums' interpretation is more consistent with the other provisions of the Declaration. For example:

- Section 5.23(A) gives the developer the authority to construct and install a fence within Hawthorne Common Area *or* within easement areas, showing that the

contract anticipated a scenario where the developer installs fences on individual lots. At the same time, Section 5.23(B) restricts the locations and styles of fences that homeowners may install, making it impossible for a homeowner to erect an 8-foot-tall, wooden privacy fence (as the developer did) or to install a fence on the far eastern edge of their property. It seems unlikely that the Declaration intended to place the responsibility for maintaining the privacy fence with the homeowners but then prevent them from replacing that fence with a fence of similar height and material in the same location.

- Section 7.3 grants the Association a perpetual easement and right-of-way to "enter upon any Lot as reasonably necessary in order to construct, install, erect, maintain, improve, repair, and/or replace any . . . fence . . . within any . . . utility and/or drainage easement" on the property. This easement would not be necessary if all the fences that the Association had to maintain were in the Hawthorne Common Area.

- Sections 4.1, 4.4, 4.5, and 4.13 provide various funding mechanisms for the Association to fulfill its duties under the Declaration, including those that arise under Section 6.1(B).

In short, the most natural and reasonable reading of Section 6.1(B) is that the Association is responsible for maintaining, repairing, and replacing fences installed by the developer, including the privacy fence that runs across the Restums' property. The district court erred when it interpreted the Declaration differently. We reverse the district court's judgment based on that incorrect interpretation, reverse the court's denial of the Restums' request for summary judgment on that ground, and remand with instructions to enter summary judgment in the Restums' favor.

Reversed and remanded with directions.

10