NOT DESIGNATED FOR PUBLICATION

No. 115,254

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Appeal of
LOWE'S HOME CENTERS, L.L.C., f/k/a LOWE'S HOME CENTERS, INC.,
from an Order of the
DIVISION OF TAXATION ON ASSESSMENT OF RETAILERS' SALES TAX.

MEMORANDUM OPINION

Appeal from the Board of Tax Appeals. Opinion filed April 14, 2017. Affirmed.

*James Bartle*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

*Richard J. Johnson*, of Jones Day, of Dallas, Texas, and *E. Kendrick Smith* and *John M. Allan*, of Jones Day, of Atlanta, Georgia, for appellee.

Before SCHROEDER, P.J., BUSER, J., and WALKER, S.J.

*Per Curiam*: The Kansas Department of Revenue (KDOR) appeals from an order of the Board of Tax Appeals (BOTA) abating an assessment of retailers' sales tax issued against Lowe's Home Centers, L.L.C., for the tax periods May 1, 2008, through April 30, 2010. Finding no error, we affirm.

FACTS

The taxpayer, Lowe's Home Centers, L.L.C., is a retailer of home improvement products and services, including the sale of home appliances. Lowe's operates in all 50 states and also in Canada, with 11 retail stores located in Kansas.

1

The Kansas Department of Revenue (KDOR) initiated a sales tax audit of Lowe's for the time period of 24 months—from May 1, 2008, through April 30, 2010. The audit involved two primary areas of compliance: (1) items that Lowe's purchased and (2) items that Lowe's sells. KDOR auditors computed the assessment by using a sampling methodology, whereby sales information for 3 months was reviewed. An error percentage was calculated, which was then applied to all of the months in the audit period. The use of a sampling technique for sales tax auditing purposes is authorized by K.S.A. 79-3610.

A notice of final assessment was entered on June 9, 2011. In a letter dated July 15, 2011, Victor Brown, Lowe's manager of sales and use tax audits, objected to the KDOR's notice of final assessment and requested an informal conference. An informal conference is authorized by K.S.A. 79-3610 and is the first step in the tax appeals process.

*Final determination by the Secretary's designee*

An appeal was filed, and the KDOR worked through the problem resolution process with Lowe's. At the conclusion of the problem resolution process, the issues that remained unresolved were referred to the KDOR Secretary's designee for decision. His ruling on those issues is set forth in a final determination dated December 10, 2013. The KDOR adjusted the sales tax assessment due to $246,290 in sales tax, $61,598 in penalty, and $54,308 in interest, for a total of $362,196. Lowe's conceded that some of the sales tax was due and owing, and it remitted a payment of $165,655. Lowe's requested a waiver of $33,957 in penalty that was assessed on the uncontested transactions. The KDOR denied Lowe's request to waive the penalties.

The KDOR's final determination noted that "[t]he remaining balance of $162,584 consists of tax, penalty and interest assessed on transactions that Lowe[']s disputes and contends are not subject to sales tax." The disputed transactions involved mostly Lowe's sales of installed appliances. The KDOR Secretary's designee, Thomas Browne, Jr.,

concluded that these sales were taxable and upheld the amounts assessed. Specifically, Browne ruled the appliances at issue constituted "tangible personal property" as that term was defined by K.S.A. 2012 Supp. 79-3602(pp), and that the gross receipts from the sale of tangible personal property were subject to the Kansas Retailers' Sales Tax pursuant to K.S.A. 2012 Supp. 79-3603(a). Browne also stated that the term "gross receipts" was defined to mean the total selling price from sales at retail within this state under K.S.A. 2012 Supp. 79-3602(o), and that "sales or selling price" was more specifically defined to mean "the total amount of consideration . . . for which personal property or services are sold . . . *without any deduction for . . . installation charges.*" K.S.A. 2012 Supp. 79-3602(ll)(1)(E).

The final determination cited and relied on the KDOR's Information Guide EDU-28, *Sales Tax Guidelines for Businesses that Sell and Service Appliances and Electronic Products*, which addresses the taxation of installation charges provided in connection with the sale of appliances, and held that "the delivery and installation services that Lowe[']s provides, either directly or through third parties acting on its behalf, are expressly included in the taxable selling price of its appliances."

Browne also found that Lowe's was not a contractor engaged in providing residential remodeling services, citing EDU-28, which stated that installation charges included in the total selling price of appliances were not exempt under K.S.A. 2012 Supp. 79-3603(p) as services performed in connection with the original construction, reconstruction, restoration, remodeling, renovation, repair, or replacement of a residence.

Lowe's took the position that it was a "contractor engaged in providing residential remodeling services" in the disputed transactions. The KDOR found Lowe's to be exclusively a business conducting retail sales. The KDOR denied Lowe's request for a waiver of sales tax and penalties. In its final determination, the KDOR demanded a total amount due of $196,541.

3

*Lowe's appeal to BOTA*

Lowe's appealed the final determination by filing its notice of tax appeal with the Kansas Court of Tax Appeals (now BOTA). Lowe's appeal protested the entire amount of tax, penalties, and interest upheld by Browne. Lowe's asserted that its sales of installed appliances were "real property improvements involving the installation and annexation of [tangible personal property] . . . which are not subject to Kansas sales tax," under the exemption provisions of K.S.A. 2016 Supp. 79-3603(p).

The Kansas Retailers' Sales Tax Act, K.S.A. 79-3601 *et seq.*, imposes a sales and use tax on retail sales of tangible personal property and certain services. The tax is paid by the consumer and collected by the retailer. K.S.A. 2016 Supp. 79-3604. The Act addresses the responsibility of contractors to collect or remit sales tax when making real property improvements for customers. K.S.A. 2016 Supp. 79-3603(l) provides that tax is imposed on retail sales, but it provides an exception for contractors:

> "(1) except as otherwise provided by paragraph (2), the gross receipts received from the sales of tangible personal property to all contractors, subcontractors or repairmen for use by them in erecting structures, or building on, or otherwise improving, altering, or repairing real or personal property.
> "(2) Any such contractor, subcontractor or repairman who maintains an inventory of such property both for sale at retail and for use by them for the purposes described by paragraph (1) shall be deemed a retailer with respect to purchases for and sales from such inventory, except that the gross receipts received from any such sale, other than a sale at retail, shall be equal to the total purchase price paid for such property and the tax imposed thereon shall be paid by the deemed retailer." K.S.A. 2016 Supp. 79-3603(l).

"Gross receipts" is defined by the statute as the total selling price. K.S.A. 2016 Supp. 79-3602(o). "Sales or selling price" means the total amount of consideration, including cash, credit, property, and services, for which personal property or services are sold valued in money, whether received in money or otherwise, without any deduction

4

for the cost of materials used, labor or service cost, interest, losses, all costs of transportation to the seller, all taxes imposed on the seller, and any other expense of the seller. K.S.A. 2016 Supp. 79-3602(ll)(1)(B).

Enumerated in the Act are specific exclusions from the definition of selling price, as well as various tax exemptions. In the prehearing order, Lowe's asserted an exemption under K.S.A. 2016 Supp. 79-3603(p), which excludes sales taxation on "installing or applying tangible personal property in connection with the original construction of a building or facility, the original construction, reconstruction, restoration, remodeling, renovation, repair or replacement" of a structure or residence.

The KDOR objected to Lowe's assertion of an exemption under K.S.A. 2016 Supp. 79-3603(p) on the grounds that the contention had not been asserted in the notice of appeal. BOTA noted the KDOR's objection but included Lowe's theory in its defenses to the assessment of taxes.

Immediately after the parties' submission of the proposed prehearing order, Lowe's moved to amend the pleadings. In the motion, Lowe's sought leave to assert a claim that the services performed in connection with its sales of installed appliances were exempt pursuant to K.S.A. 2016 Supp. 79-3603(p). Lowe's requested that BOTA amend the prehearing order and address the issue in the interest of judicial economy. Lowe's claimed that if BOTA declines to consider the applicability of the exemption, the issue would arise again during the next audit cycle, and a second case on the same issue would require additional attention, time, and resources. In the motion, Lowe's also asserted that "[m]ore than 90% of the Taxpayer's real property improvement services are performed on residences."

The KDOR responded to the motion by stating that Lowe's notice of tax appeal was required to contain "a concise statement of all relief sought" under K.A.R. 94-5-4(c)(5) and that Lowe's notice of appeal failed to make reference to an exemption under K.S.A. 2016 Supp. 79-3603(p). On February 18, 2015, BOTA denied the KDOR's request for oral argument on the motion and issued a written order permitting Lowe's to assert this claim. BOTA reasoned that Lowe's had "clearly cited K.S.A. 79-3606(p) [*sic*] as an applicable exemption statute in its theory of claims" and that the prehearing order "is the point in time at which all the specific claims and defenses of the parties must be set forth." BOTA concluded "that the claim for relief specifically citing the K.S.A. 79-360[3](p) will be allowed to be included in the prehearing order" and that "the notice of appeal is hereby amended to include the claims listed by [Lowe's] in the prehearing order."

*The evidentiary hearing*

BOTA held an evidentiary hearing April 9, 2015, at which three witnesses testified. At the hearing, Lowe's presented the testimony of Craig Price, Lowe's Director of Sales and Use Tax, and Richard Cram, Director of Policy and Research for the KDOR. The KDOR presented the testimony of Kathie Gustafson, an employee in the Problem Resolution Area of Audit Services of the KDOR, as its sole witness.

Cram was designated by the KDOR to testify as its representative regarding the KDOR's interpretation of Kansas law relating to when tangible personal property becomes affixed to real property and as to the various KDOR tax publications and all authorities the KDOR relies on in support of its interpretations of Kansas law. Cram testified that it was the KDOR's position that Lowe's was a retailer, not a contractor, with respect to its sales of installed appliances. He cited the definition of selling price contained in K.S.A. 2016 Supp. 79-3602(ll) and stated that the statute "expressly includes installation services in the sales tax base." Cram also pointed to policies adopted by the

6

KDOR in response to the repeal of the definition of contractor in 2000, an amendment to the imposition of sales tax on purchases made by contractors in 2000, and the authorization granted by the Kansas Legislature to participate in and later adopt the development of the Streamlined Sales and Use Tax Agreement (SST Agreement).

Cram explained that the SST Agreement gave states the option to "either include or exclude installation charges" in the definition of selling price. Given that choice, he testified that Kansas decided that installation charges would be included. Cram summarized the effect of the revised definition of selling price now found at K.S.A. 2016 Supp. 79-3602(ll):

> "Well, it definitely made clear that installation charges for tangible personal property are a part of the retail sale of that tangible personal property. So for example, if someone buys a stove or a dishwasher, that's tangible personal property, installation charges would be considered part of the sales tax base and subject to sales tax."

Cram summarized various policies, information guides, and private letter rulings issued by the KDOR to address the tax treatment of installed appliances, including EDU-28, *Sales Tax Guidelines for Businesses that Sell and Service Appliances and Electronic Products*; EDU-26, *Sales Tax Guidelines for Contractors and Contractor-Retailers*; Pub. KS-1525, *Kansas Sales & Use Tax for Contractors, Subcontractors & Repairmen*; P-2008-013, *Decorating center's transfer and installation of Venetian blinds and other window treatments*. Each document was admitted into evidence.

Cram testified that the installation of an appliance did not fall under the definition of residential remodeling. Gustafson agreed with Cram's position that sales tax should be collected on installed appliances.

Cram acknowledged that K.S.A. 2016 Supp. 79-3603(l)(2) was written specifically to address situations like this one in which a retailer also provided contracting services:

"Q  The contractor/retailer—the contractor/retailer concept that you just mentioned, what is the statutory basis for that concept?

"A  It's been kind of discussed earlier, but the idea is if you do that contracting work but you also maintain an inventory that you make retail sales from, then essentially you wear two hats, you're a contractor when you purchase materials and you go out and do a construction job, and you're deemed to be the consumer of the materials that you purchased and you apply it to the construction project. You're a retailer, you put your retailer hat on when you sell items out of your inventory for retail sale.

"Q  And is there a statutory provision that gives you this guidance to make those statements?

"A  Yes, I think it's in [K.S.A. 79-]3603(l)."

Under K.S.A. 2016 Supp. 79-3603(l)(2), a contractor like Lowe's "who maintains an inventory of such property both for sale at retail" and for installing home improvements must pay the sales tax on "the total purchase price paid for such property." It is undisputed that Lowe's complied with this requirement.

As noted above, K.S.A. 2016 Supp. 79-3603(p) provides an exemption from sales tax for all installation services connected with the "original construction, reconstruction, restoration, remodeling, renovation, repair or replacement of a residence . . . ." In this exclusion, there is no exception distinguishing the installation of built-ins from other residential home improvements.

In a *Private Letter Ruling 1998-20:  Contractor vs Contractor/Retailer* (February 20, 1998), the KDOR published guidance to contractor-retailers like Lowe's:

"When the contractor/retailer sells the materials or supplies over the counter at retail, the contractor/retailer would collect and remit the appropriate sales tax.

"On the other hand, when the contractor/retailer removes materials from inventory to use on a construction project, the contractor/retailer would report and pay the appropriate sales tax on the cost of the materials."

Cram confirmed that even though the Kansas Legislature subsequently repealed the statutory definition of "contractor" referenced in the Letter Ruling, the substance of the Letter Ruling has never changed and is "still the rule" in Kansas.

On July 1, 1998, the KDOR issued Public Notice 98-02, which provided its official interpretation of then newly enacted exclusion:

"As amended by SB 493, K.S.A. 79-3603(p) exempts charges for installation or application labor services when such services are performed in connection with 'the original construction, reconstruction, restoration, remodeling, renovation, repair or replacement of a residence.' The following list contains definitions for the terms used in the new enactment.

. . . .

"Restoration—Construction activities performed to bring part or all of a residence that is operating and functional back to its original condition or as near to it as possible.

"Remodeling—Construction activities performed to make over or upgrade part or all of an existing residence.

"Renovation—Construction activities performed to renew, repair or restore part or all of an existing residence to an improved state of freshness, soundness or newness of appearance or structure.

"Repair—Construction activities performed to mend or restore to a working order or operating condition part of an existing residence that was broken, damaged, worn, defective, or malfunctioning by replacing a part or by putting together that which is broken or damaged.

"Replacement—Construction activities performed to put something new in the place of something that was previously there.

9

. . . .

"'Building components' or 'components parts' include the structural parts of a residence or other building, such as walls, floors, ceilings, roofs, trusses, and foundations, and any manually operated components, such as windows and doors. 'Fixtures' means those items that are permanent accessories to a residence or other building and do not lose their identity when installed. A non-exclusive list of items that shall be presumed to qualify as building components or fixtures for purposes of SB 493 is set forth in Appendix A.

"To become part of a building, components and fixtures must be connected to the building by physical means, such as by bolts, nails, screws, cement, piping, or wire. Components and fixtures are intended to be permanent improvements to the building and make the building complete or habitable. Removal of a component or fixture would often damage the component or fixture or require the alteration or repair of the structure to which component or fixture is affixed.

"For purposes of proper administration of the exemption for repair services, the following appliances shall be presumed have become part of the real property regardless of how they are connected or affixed to a residence: dishwashers, cooking stoves, ovens, refrigerators, freezers, trash compactors, clothes washers, and clothes dryers. These appliances are often built into real property, or, if free standing, may be affixed by water hook ups, gas connections, or hard wiring. The variety of ways in which these appliances may be affixed to real property makes it impossible for persons who repair them to consistently determine whether the repair services should be taxed as the repair of tangible personal property, or exempted as the repair of a fixture that is part of the residence. Accordingly, the department has determined that these appliances shall be presumed to be part of real property and that repair services done to them at the residence shall be exempt.

". . . However, when such an item is detached from a residence and taken from the residential site for repair, the items is considered to revert to tangible personal property."

Appendix A of Public Notice 98-02 contained "a non-exclusive list of items that are presumed to be fixtures or residential components for purposes of SB 493," which included, among many other items, numerous built-ins.

10

Evidence presented at the BOTA hearing established that Lowe's primarily engages in two types of customer transactions: (1) standard retail sales of tangible personal property and some services to customers which do not require contracts and (2) residential real property improvements performed via written contracts.

Lowe's sold various appliances that it referred to as built-ins—specifically dishwashers, garbage disposals, over-the-range microwave ovens, wall ovens, ranges, cook-tops, and range hoods—which could be sold as tangible personal property or pursuant to an installation contract.

When a customer made a retail purchase of tangible personal property at Lowe's, the system calculated the sales tax at the register. The customer tendered payment and obtained immediate title and possession to the tangible personal property. The transaction was conducted over the counter without a contract. Lowe's did not dispute that sales tax was due for these sales. Lowe's also paid sales tax on its sales and installations of moveable appliances—such as refrigerators, washing machines, and freezers. Those appliances were not fixtures and did not involve an annexation to real property.

When a customer purchased the built-ins pursuant to an installation contract, the transaction involved a contractor selling and installing the built-in, which annexed to the real property. In this situation, the customer and Lowe's employee agreed to the terms of an installation contract, which the customer and the employee both signed. The customer proceeded to the checkout register, where the cashier processed the sale and collected full payment for the installation contract. The customer left the store with no tangible personal property, but possessed a contractual right to receive a future real property improvement to his or her home. In this instance, Price testified that Lowe's was acting as "a contractor performing a real property improvement. We do not charge tax on the labor. We do not charge tax on the material. We instead accrue sales use tax on the cost price of the installed materials."

11

The KDOR agreed with Lowe's tax treatment of many of its installation contracts during the audit period. For instance, the KDOR and Lowe's both agreed that the installation contracts to install a roof, a sink, a faucet, a shower head, a water softening system, a light fixture, and a ceiling fan into customers' homes involved real estate improvements that were not subject to retailers' sales tax. Lowe's was acting as a contractor, and no sales tax was due on either the materials or the concomitant labor.

However, the KDOR did not agree with Lowe's contention that it was acting as a contractor when it installed built-in appliances at a customer's residence. In these situations the KDOR deemed Lowe's to be a retailer of tangible personal property and claimed that Lowe's should have collected from the customer and remitted sales tax on the entire real property improvement fee. As noted in the KDOR's responses to written discovery:

> "[T]o the extent that [Lowe's] sold appliances, including but not limited to ranges, range hoods, ovens, microwave ovens, garbage disposals, stovetops (or 'cooktops'), and dishwashers, in Kansas during the Audit Period and such sales included installation charges, it is the Department's position that [Lowe's] installation charges were part of the 'sales or selling price' of such appliances and did not constitute separate services performed in connection with real property improvements."

During the audit period, covering the tax periods May 1, 2008, through April 30, 2010, Lowe's remitted Kansas state and local use tax to the KDOR for the amount it paid to acquire the tangible personal property consumed in performing the installation contracts. Lowe's accrued and remitted Kansas tax for the cost of materials consumed in performing the installation contracts.

Lowe's contracted with third parties to perform its product installations. Copies of the installation contracts involving built-ins installed during the assessment period were submitted at trial, and each provided that Lowe's

12

"agrees to sell goods and/or materials (the 'Goods') and the services to install same (the 'Installation Services') . . . for the stated total cash price (the 'Price') and according to the specifications and other provisions of the Contract documents, including (a) this Contract form, (b) the Addendum, if and to the extent applicable, (c) and any attached sketches, material lists, floor plans, and/or specification sheets."

The installation contracts were lump-sum agreements that required Lowe's to complete the real property improvement for a specified fixed price. The agreements further provided:

"Customer authorizes Lowe's (a) to arrange for the Installation Services to be performed by an experienced independent contractor (the 'Installer') (licensed when legally required), (b) to issue a work order to the Installer to perform the Installation Services, (c) to inspect the Installer's work, and (d) to pay the Installer after completion of the work and after receipt of a certificate, signed and dated by Customer, that the work has been satisfactorily completed (the 'Certificate of Completion')."

The contracts provided that Lowe's was "responsible to Customer for obtaining any and all licenses and building permits which are legally required to perform the Contract." In addition, Lowe's warranted "that the Installation Services will be performed by the Installer in a good and workmanlike manner" and was responsible for the contract "being performed in compliance with all applicable safety rules and all existing building codes, zoning ordinances and other laws." Title to the tangible personal property remained with Lowe's throughout the installation process and "[a]ny surplus materials upon completion of the Installation Services shall remain the property of Lowe's and shall be returned to Lowe's by the Installer." In the event that the actual labor and/or material costs necessary to complete the project exceeded the lump-sum amount specified in the Installation Contract, then Lowe's absorbed the difference in cost and did not collect any additional payments from the customer. And if the customer was not satisfied with the installation, Lowe's bore the risk and arranged for the work to be performed properly.

13

Lowe's submitted into evidence the various installation manuals for each category of built-ins. The installation manuals included details about the tools required for proper installation and the procedure employed to install the built-ins. Price provided additional testimony and evidence regarding the process of installing the built-ins. BOTA included information about the installation of the built-ins in its final order. Lowe's brief contains additional details about the installation process, with cites to the record, in regard to each of the individual built-ins that Lowe's asserts qualifies under the exemption.

Price testified that installing built-ins into a residence was not the "type of thing that an ordinary customer without special skill and experience could do." Once installed, each of the built-ins became permanently affixed to the house. Price testified that nearly all of the built-ins installation contracts were sold to customers making improvements to residences. Price estimated the sales to commercial customers to be "[w]ay less than one percent."

During the hearing, Cram testified as to the KDOR's position:

"Q  Okay. Now in this particular case the Department's position is that with respect to the categories that we talked about of appliance installations that Lowe's was a retailer and not a contractor; is that correct?
"A  Yes.
"Q  Okay. But when Lowe's enters into installation contracts to make other home improvements such as a roof, a sink, a faucet, a shower head, water softening system, light fixture, ceiling fan, it is a contractor; is that correct?
"A  That's correct.
"Q  Okay. And those circumstances no sales tax is due from the customer on either the materials or the labor; is that correct?
"A  That's correct.
"Q  But if it's deemed to be an appliance in the interpretation of the Department then [the] customer owes tax on both the materials and the labor?
"A  That's correct.

14

"Q So there is—how you characterize the transaction has a dramatic substantial impact on the tax consequences of the transaction?

"A Yes."

Cram acknowledged that the KDOR's distinction between home improvements involving built-in appliances and other installation contracts for home improvements did not appear anywhere in the Kansas statutes:

"Q . . . Does the distinction between an appliance installed, built-in appliance home improvement and other home improvements appear anywhere in the Kansas Tax Code?

"A It doesn't appear in the statutes."

When addressing Public Notice 98-02 at trial, Cram acknowledged the following:

"Q Okay, And that amendment that came out in '98 [now K.S.A. 2016 Supp. 79-3603(p)] they haven't changed that amendment since '98 have they?

"A That's correct.

"Q Okay. So this is guidance about how to interpret that amendment [the exclusion] when it came out; is that correct?

"A Yes.

"Q And it does a couple of things. It defines on the second page restoration, remodeling, renovation, repair and replacement and they're broadly defined; are they not?

"A You could say that, yes.

"Q Okay. And it even goes so far as has a list in the back of items that are presumed to be fixtures or residential components for purposes of this exemption, and this is the last two pages. You see that list?

"A At the appendix?

"Q Yes.

"A Yes.

"Q And it specifically says that: Items that fall within that exemption would be cooking stoves, dishwashers, exhaust fans, garbage disposals and ovens; does it not?

"A Yes.

15

"Q  And that statute has not been changed since this guideline came out from the Department?

"A  That statute has not."

In 2003, Kansas adopted the SST Agreement. Price testified that the SST Agreement was an attempt to establish consistency between and among the states primarily in regard to definitions. The KDOR stated that, when the state signed the SST Agreement, the legislature had to amend the statutory definition of "selling price" in the Kansas Retailers Sales Tax Act under K.S.A. 2016 Supp. 79-3602(ll)(1). "Selling price" is stated as applying to

"the measure subject to sales tax and means the total amount of consideration, including cash, credit, property and services, for which personal property or services are sold, leased or rented, valued in money, whether received in money or otherwise, without any deduction for the following:

. . . .

"(E) installation charges." K.S.A. 2016 Supp. 79-3602(ll)(1).

On May 31, 2005, the KDOR issued EDU-28, a public information guide, to reflect its new interpretation of the exclusion now in K.S.A. 2016 Supp. 79-3603(p). The public information guides contain the following disclaimer:

"While every attempt is made to provide you with information that is consistent with Kansas tax statutes, regulations, and court decisions, nothing in this publication supersedes, alters, or otherwise changes any provision of the Kansas tax law. Department guidelines are not legal rulings and any information that is inconsistent with Kansas tax laws is not binding on either the department or the taxpayer."

According to Cram, the KDOR relied on the SST Agreement and the revised definition of "selling price" to justify its new position the installation of built-ins were not included in the exemption under K.S.A. 2016 Supp. 79-3603(p).

16

EDU-26 announced the following "Contractor Guidelines":

"It is important to understand why contractors pay sales tax when they buy construction materials instead of buying materials tax exempt and charging sales tax to the property owner. Contractors pay sales tax on their material purchases because sales tax is imposed on 'retail sales of tangible personal property.' These are sales to consumers or 'final users' of anything that can be seen, weighted, measured, felt, or touched and that are not part of real property.

"A contractor who agrees to construct a building is not contracting to sell lumber, cement, siding, roofing, and other building materials. Rather, the contractor is agreeing to apply his or her skill and labor to transform the construction materials into a completed building. When the building is accepted by the property owner, the nails, lumber, and other materials have become part of real property. These materials are no longer tangible personal property whose transfer is taxed under the Kansas sales tax act.

"The last transfer of construction materials as *tangible personal property* is the transfer to the contractor. Consequently, sales tax laws treat contractors as being the final user or consumer of the construction materials and supplies they buy and use to improve real property. This is why contractors pay sales tax when they buy materials and supplies instead of charging sales tax when they bill the property owner to recoup their expenses."

EDU-26 defined the following terms as guidance for taxpayers. Lowe's acknowledged that the following definitions were consistent with Kansas law. EDU-26 states:

"**Contractor** means a person or business, including contractor-retailers, that contract to furnish materials and labor to construct, alter, repair, or improve real property, including buildings and other structures. A contractor expends its labor and skill to convert building materials into real property improvements. . . .

"**Contractor-retailer** means a person or business that acts as a contractor when it performs construction contracts and as a retailer when it sells tangible personal property at retail. A contractor-retailer holds itself out as providing construction services and operates retail showroom or otherwise maintains an untaxed resale inventory to sell

17

merchandise from. A contractor-retailer withdraws merchandise from the untaxed resale inventory to use in their construction projects and to sell at retail.

"**Materials** means construction materials and components, and other tangible personal property incorporated into or affixed to real property by contractors or contractor-retailers in the performance of a construction contract and which, when combined with other property, loses its identity to become an integral and inseparable part of real property. Materials are items intended to become part of a building, structure, road, parking lot, or any other addition, improvement, repair or alteration of real property.

. . . .

"**Over-the-counter sale** means any retail sale of materials, fixtures, or other items made at the seller's business. The seller does not agree to have its employees or a third-party install or affix the item being sold to real property.

. . . .

"**Retail sale** includes the sale of building materials, supplies, equipment, or other tangible items to the final user or consumer that are not being installed by the seller or its agent under a construction contract."

EDU-26 also contains the following new definitions, which do not appear in the Kansas Tax Code nor are they consistent with Public Notice 98-02:

"**Mixed contract** means a single contract that calls for the performance of construction services and for the retail sale of tangible personal property. A contractor-retailer who enters into a mixed contract is treated as the consumer of the construction materials that it uses on the project and as the retailer of the goods that it sells under the contract.

. . . .

"**Retailer** includes a person or business that sells building materials and other tangible personal property at retail. Contractor-retailers are treated like retailers when they sell tangible personal property at retail without agreeing to install it and when they sell appliances, electronic products, and certain other listed items at retail and agree to provide set up services. . . .

. . . .

18

"**Set-up Services** include placing an appliance, electronic product, or listed item in working order by assembling it, sliding it into an existing opening, locating and fixing it in place, connecting it to existing water or gas services, plugging or wiring it into existing electrical services, connecting it to existing discharge pipes or vents, programming its controls, and so forth. When arranged at the time of a retail sale, charges for set-up services are considered to be part of the selling price and are taxed whenever the sale of the property is taxed."

EDU-28 contains most of the same definitions as EDU-26, but it also provides a definition of the term "appliance:"

"**Appliance** means a refrigerator, freezer, range, stovetop, oven, microwave oven, washer, dryer, dishwasher, garbage disposal, trash compactor, window air-conditioner, small appliances such as coffee makers, and other similar products that are normally used or sold for personal, family, or household use. This term also refers to the same items when used commercially. Whether built-in or free-standing, appliances are treated as tangible personal property and not as fixtures or other parts of a residence or commercial building when they are serviced or repaired. Appliances do not include, among other things, central vacuum systems, HVAC systems, soft-water systems, hot water heaters, attic fans, or hard-wired lighting fixtures."

Price testified that the Kansas Retailers' Sales Tax Act does not define the term appliance, nor does it provide any distinction between contractors installing appliances or other permanent fixtures. Price also testified that Lowe's believes it is responsible to tax every transaction in compliance with the law.

On cross-examination Cram acknowledged that, even though the KDOR based its new interpretation solely on the revised definition of "selling price," the 2003 amendment to K.S.A. 79-3602(ll) did not change how Kansas treated real property improvements:

19

"Q [The SST Agreement] didn't change at all how Kansas treated sales of real property improvements did it?

"A If we consider it a real property improvement that's correct.

"Q Okay. There's nothing in this Legislation that says an appliance is not a real property improvement is there?

"A No.

"Q Okay. The Streamlined Sales Tax Act Legislation did nothing to alter what had previously been the general rule that real property improvements are not subject to sales tax did it?

"A That's correct.

"Q Okay. And the concept of carving out appliances from other real property improvements was something the [KDOR] came up with; am I correct?

"A We felt we needed to provide guidance on what is or isn't considered a real property improvement that falls within the residential remodeling exemption so that's—that's the reason we—that we did come up with that.

"Q So the [KDOR] is the one that came up with appliances being carved out from real property improvements, no one else did, the [KDOR] did; is that correct?

"A That's correct.

"Q Okay. And that, as I recall from your testimony, was as a result of a new Secretary coming into the Department of Revenue in 2005 who had a different idea about how real property improvements should be dealt with; am I correct?

"A That's correct.

"Q But nothing changed as far as the Code's concerned regarding real property improvements since 1998 has it?

"A [K.S.A. 79-] 3603(p) was—has not been amended, correct.

"Q Okay. And as we've noted it just then, the amendment definition of sales price has nothing to do with real property improvements; am I correct?

"A That's correct."

For the built-ins at issue, Price testified that Lowe's installation comprised the installation or application of "tangible personal property in connection with the original construction of a building or facility, the original construction, reconstruction, restoration, remodeling, renovation, repair or replacement of a residence" as defined in K.S.A. 2016

20

Supp. 79-3603(p). For all of the built-ins at issue, Price stated that once these items are installed, they are permanently affixed to the home. For example, Price testified that in his experience, once a dishwasher was installed in a kitchen, the homeowner deems it a permanent fixture.

Lowe's has implemented an internal policy for its installed sales program, which provides: "It is Lowe's policy to conduct an installation program compliant with all federal, state and local . . . tax regulation requirements." The policy contains procedures "[t]o ensure sales tax is charged correctly on all installed sales."

Lowe's reviewed its most recent 110 weeks of data of installed sales nationwide and concluded that approximately 95% of its sales were for residential as opposed to commercial applications. In addition, the Installed Sales Coordinator at one of the Kansas stores testified that virtually all of its installations were for residential customers, and there had been only one nonresidential installation in the past 2 calendar years. Price estimated the commercial sales of appliances in Kansas accounted for less than 1% of its sales.

Lowe's presented one representative installation manual for each type of built-in at issue. For all of the built-ins, Price testified that a typical consumer customer without special training and skill could perform the installation. But to do the installation safely and correctly—especially for those built-ins having a natural gas connection—Price strongly recommended that a skilled professional perform the installation.

Price testified that the installation transactions that were subject to the assessment levied by the KDOR all fell within the definitions of "restoration," "remodeling," "renovation," "repair," and/or "replacement" as those words are used in K.S.A. 2016 Supp. 79-3603(p). Price testified, "We're acting as a contractor doing real property improvement. Therefore, retail sale is not happening; therefore, we should be treated as a

contractor and taxes due on the materials at their purchase price." Price confirmed that Lowe's had accrued Kansas tax on its purchases of materials but had not collected tax on any portion of the sales made to its customers.

Price testified that Lowe's maintained an inventory of tangible personal property for sale at retail. Lowe's classified its installed sales as either Type 1 or Type 2. Type 1 sales involve the withdrawal of materials from Lowe's inventory for installation in connection with the sale of an installed appliance by a third-party contractor. All of the sales of installed appliances at issue in this case were Type 1 sales.

Price explained a number of considerations that he felt were relevant for the purposes of determining when Lowe's was acting as a contractor as opposed to a retailer, such as the intent of the customer, the level of annexation, damage caused by removal from the real estate, loss of functionality, and transfer of title. Price said that all of these factors would need to be weighed and considered in making the distinction of whether Lowe's is acting as a contractor or a retailer.

Price testified that Lowe's sales of installed appliances involved the service of installing or applying tangible personal property in connection with the restoration, remodeling, repair, or replacement of a residence as set forth in K.S.A. 2016 Supp. 79-3603(p). On cross-examination, Price restated his belief that if a dishwasher is installed in a customer's home, the installation meets the exemption under residential remodeling.

*BOTA's decision*

On June 29, 2015, BOTA issued its summary decision finding in favor of Lowe's. Although the amount in dispute on the prehearing order was listed as $196,541, BOTA stated that the adjusted assessment in the "aggregate sum of $162,584 is abated in its

22

entirety." The decision did not specifically address the denial by the Secretary's designee of Lowe's request to waive the penalties totaling $33,957.

As to the taxation of installed appliances, BOTA concluded that the exemption in K.S.A. 2012 Supp. 79-3603(p) applied. BOTA concluded that all of the transactions at issue involved improvements to residential properties and that "in undertaking these installations, [Lowe's] was acting as a contractor and not a retailer." In addition, BOTA found the transactions were real property improvements and Lowe's had correctly self-assessed use tax on its cost of materials. The KDOR filed a request for a full and complete opinion from BOTA.

On July 29, 2015, the KDOR filed a petition for review with the Court of Appeals. On September 17, 2015, this court dismissed the appeal as interlocutory. The KDOR then made a second request for a full and complete opinion under K.S.A. 2016 Supp. 74-2426(a).

BOTA issued its final decision on January 21, 2016. BOTA's order contained six pages of factual findings as well as the applicability of those facts to the rules of law. BOTA identified the issue as whether the installation of built-ins qualified for the sales tax exemption under K.S.A. 2016 Supp. 79-3603(p). BOTA discussed Kansas law as to what constitutes a "fixture" under the common law and applied the three-part fixture test to the evidence presented. BOTA found:

> "Price provided testimony regarding the annexation and adaptation of the built-ins as well as the intent of the annexing party. Price's testimony, in concert with the representative installation manuals for each of the subject built-ins, provided detailed and specific evidence regarding the installation of each built-in type at issue. Price's testimony was persuasive, mostly unchallenged—as KD[O]R presented no evidence regarding annexation, adaptation or intent in regard to the subject built-ins—and, therefore, the best evidence in the record for application of the three-part fixtures text. Lowe's evidence

23

indicates that the built-ins were annexed to the structure by screw and bolts, and directly connected to any necessary utility services and venting apparatus of the realty in a permanent fashion. The Board notes that the over-the-range microwave/range hoods and garbage disposals are more typically plugged into an electrical outlet rather than hard-wired to the residence's electrical service. Further, the built-ins were installed at the realty to provide use and functionality to the residential occupant/property owners.

"Price presented specific testimony indicating the built-ins were intended to be permanent parts of the real estate. . . .

"Examination of all the record evidence regarding installation of the built-ins pertinent to the fixtures' question, and again noting that the testimony of Lowe's witness Price—a licensed contractor—was the sole fixtures evidence presented, persuades the Board, after application of the three-part fixtures text, that the built-ins at issue are properly deemed real property improvements upon installation."

BOTA concluded that Lowe's satisfied its evidentiary burden to show that the disputed transactions were exempt from sales tax as real property improvements that "were performed in connection with the reconstruction, restoration, remodeling, renovation, repair and /or replacement of a residence and are, therefore, exempt from the retailers' sales tax pursuant to K.S.A. 79-3603(p)."

BOTA then stated that Lowe's request for relief was granted and "the adjusted assessment of retailers' sales tax, interest, and penalties issued to [Lowe's] in the aggregate sum of $162,584 is abated in its entirety." In addition, BOTA noted that Lowe's request for relief "from the interest and penalties applied to the adjusted assessment is hereby deemed moot as the underlying assessment has been hereby cancelled in its entirety."

The KDOR filed a petition for judicial review with this court on February 18, 2016. See K.S.A. 2016 Supp. 74-2426(c)(4)(A).

24

On appeal, the KDOR contends that the sales of built-ins are taxable as retail sales of tangible personal property and installation services to customers. The KDOR claims that BOTA erred in finding the sales of built-ins were exempt from sales tax, asserting: (1) BOTA's decision failed to comply with the Kansas Administrative Procedures Act, K.S.A. 77-501 *et seq.*; (2) BOTA erred in its interpretation and application of certain provisions contained in the Kansas Retailers' Sales Tax Act, K.S.A. 79-3601 *et seq.*; (3) BOTA's factual findings are not supported by substantial competent evidence when viewed in light of the record as a whole; and (4) BOTA's actions were unreasonable, arbitrary, or capricious.

*Standards of review*

KDOR did not file a petition for reconsideration with BOTA as permitted by K.S.A. 2016 Supp. 74-2426(b). However, a petition for reconsideration is no longer required as a prerequisite for review by this court. Rather than filing a petition for reconsideration, any aggrieved person has the right to appeal an order of BOTA by filing a petition with the Court of Appeals or the district court under K.S.A. 2016 Supp. 74-2426(c)(4)(A).

However, the change in Kansas law places this court at a disadvantage. Before 2014, a petition for reconsideration was required. This petition allowed BOTA the opportunity to readdress assertions of error and provided the method under which the appellant preserved its issues for review. In this case, it is unclear whether BOTA abated the $33,957 in penalties along with the tax liability of $162,584. Therefore, under K.S.A. 2016 Supp. 74-2426(c)(4)(A), which permits direct appeals to this court, it will be imperative for the KDOR to point to support in the record for any facts necessary to support its contentions of error.

25

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, defines the scope of judicial review of state agency actions. *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 361-62, 212 P.3d 239 (2009). BOTA orders are subject to KJRA review. K.S.A. 2016 Supp. 74-2426(c). As noted by BOTA in its decision, Lowe's bore the burden of proof before BOTA under K.S.A. 2016 Supp. 79-1609. But on appeal the KDOR has the burden of proof in this case. An appellate court presumes the agency action was valid; and on appeal, the party claiming an invalid action of the agency has the burden of establishing such invalidity. K.S.A. 2016 Supp. 77-621(a)(1); *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 953, 335 P.3d 1178 (2014); *Romkes v. University of Kansas*, 49 Kan. App. 2d 871, 880, 317 P.3d 124 (2014).

When construing tax statutes, the statutes must be construed strictly in favor of the taxpayer. However, tax exemption statutes are interpreted strictly in favor of imposing the tax and against allowing an exemption for one who does not clearly qualify. *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1045, 271 P.3d 732 (2012). Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). In making the unlimited review of a Kansas statute, deference is no longer given to the agency's interpretation. See *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013); *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, Syl. ¶ 2, 228 P.3d 403 (2010). This ruling has been specifically applied to decisions of BOTA by *In re Tax Exemption Application of Kouri Place*, 44 Kan. App. 2d 467, 472, 239 P.3d 96 (2010).

K.S.A. 2016 Supp. 77-621(c) sets out eight standards under which an appellate court shall grant relief. In this case, the KDOR relies on K.S.A. 2016 Supp. 77-621(c)(4), (c)(5), (c)(7), and (c)(8) to support its argument that relief should be granted.

26

K.S.A. 2016 Supp. 77-621(c)(4) requires an appellate court to grant relief if the agency erroneously interpreted or applied the law.

K.S.A. 2016 Supp. 77-621(c)(5) provides that an appellate court shall grant relief if the agency has engaged in an unlawful procedure or has failed to follow the prescribed procedures.

K.S.A. 2016 Supp. 77-621(c)(7) allows an appellate court to grant relief if the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in the light of the record as a whole. After being amended in 2009, K.S.A. 2016 Supp. 77-621(d) now defines "in light of the record as a whole" to include the evidence both supporting and detracting from an agency's finding. Courts must now determine whether the evidence supporting the agency's factual findings is substantial when considered in light of all the evidence. K.S.A. 2016 Supp. 77-621(d); *Redd v. Kansas Truck Center*, 291 Kan. 176, 183, 239 P.3d 66 (2010). Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined. *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709, 216 P.3d 170 (2009).

Finally, K.S.A. 2016 Supp. 77-621(c)(8) permits an appellate court to grant relief if BOTA's action is otherwise unreasonable, arbitrary, or capricious.

*Did BOTA's final order set forth adequate findings?*

The KDOR first challenges the adequacy of BOTA's findings. The KDOR has two specific complaints:  (1) The separately stated paragraphs in BOTA's order are labeled "Evidence" instead of "Findings of Fact"; and (2) BOTA did not place a number before each of its paragraphs.

The KDOR asserts that it is entitled to relief under K.S.A. 2016 Supp. 77-621(c)(5) because BOTA failed to follow prescribed procedures in issuing its final order. Both parties agree that the KDOR bears of the burden of showing that BOTA's final order failed to comply with the Kansas Administrative Procedures Act.

K.S.A. 77-526(c) requires:

"A final order or initial order shall include, separately stated, findings of fact, conclusions of law and policy reasons for the decision if it is an exercise of the state agency's discretion, for all aspects of the order, including the remedy prescribed and, if applicable, the action taken on a petition for stay of effectiveness. Findings of fact, if set forth in language that is no more than mere repetition or paraphrase of the relevant provision of law, shall be accompanied by a concise and explicit statement of the underlying facts of record to support the findings."

Meaningful appellate review is precluded when an administrative agency's factual findings and legal conclusions are inadequate to disclose the controlling facts or the basis of the agency's findings. *Jones v. Kansas State University*, 279 Kan. 128, 142, 106 P.3d 10 (2005).

BOTA's final order sets out 21 separate and concise paragraphs describing the facts established by the evidence at trial. The heading for the findings of fact is "Evidence," rather than "Findings of Fact," but the content is the key for this court's review. The paragraphs are clearly BOTA's findings of fact, and the findings are sufficient for this court to review and determine whether the decision reached was reasonable and lawful. See *In re Tax Appeal of Dillon Stores*, 42 Kan. App. 2d 881, 888, 221 P.3d 598 (2009).

The KDOR stated that its proposed findings of fact were submitted to BOTA in 18 separately numbered paragraphs with specific references to the record. The KDOR

complained that BOTA issued its findings as a narrative summary of the evidence with virtually no citations to any testimony or exhibits.

K.S.A. 77-526(c) requires only that a final order "include, separately stated, findings of fact, conclusions of law and policy reasons for the decision if it is an exercise of the state agency's discretion, for all aspects of the order." BOTA's order complies with the statute. The statute does not mandate that each paragraph contain a separate number. The heading referring to the findings as "Evidence" rather than "Findings of Fact" does nothing to preclude our review of the issues raised. Finally, there is no requirement that BOTA key the evidence to the record. The KDOR has provided no authority for its position that BOTA did not meet the statutory requirements of K.S.A. 77-526(c).

The KDOR cites to *Water District No. 1 v. Kansas Water Authority*, 19 Kan. App. 2d 236, Syl. ¶ 2, 866 P.2d 1076 (1994), to support its position that the order must contain separately stated findings of fact. However, there is no requirement that the findings must be numbered or labeled as "Findings of Fact." In *Water District No. 1*, the Court of Appeals stated:

> "'An administrative agency must assume the responsibility of expressing the basic facts on which it relies with sufficient specificity to convey to the parties, as well as to the court, an adequate statement of the facts which persuaded the agency to arrive at its decision. Thus, there must be findings on all applicable standards which govern the agency's determination, and the findings must be expressed in language sufficiently definite and certain to constitute a valid basis for the order, otherwise the order cannot stand. *Kansas Public Service Co. v. State Corporation Commission*, 199 Kan. 736, 744-745, 433 P.2d 572 (1967). Findings of ultimate fact expressed in the language of the applicable statute are not enough in the absence of basic findings to support them. *Cities Service Gas Co. v. State Corporation Commission*, 201 Kan. 223, 230, 440 P.2d 660 (1968).' *Blue Cross & Blue Shield v. Bell*, 227 Kan. 426, 433-34, 607 P.2d 498 (1980)." *Water District No. 1*, 19 Kan. App. 2d at 241-42.

In this case, BOTA provided 21 paragraphs of factual findings with specific reference to the extensive testimony given by Price on behalf of Lowe's, the specific terms of the installation contracts, the detailed requirements for installing each of the categories of built-ins into a residence, and the testimony of Cram on behalf of the KDOR. After reciting the evidence, the Board explained how the evidence applied to Kansas law and concluded that Lowe's met its burden to show that the installation contracts were exempt from sales tax under K.S.A. 2016 Supp. 79-3603(p). The Board also commented that the KDOR "presented no witness testimony or documentary evidence controverting any of the installation evidence presented by Lowe's." BOTA's order is "'sufficiently clear so that a court is not required to speculate as to its basis.'" *In re Tax Appeal of Dillon Stores*, 42 Kan. App. 2d at 889.

BOTA's final order set forth extensive findings of fact and applied the evidence to Kansas law in reaching its conclusions. BOTA adequately set forth specific findings explaining the basis of its decision. BOTA's findings of fact are sufficient to allow for proper review, and its conclusions of law are consistent with the applicable law. BOTA's final order contains adequate findings and complies with K.S.A. 77-526(c).

*Did BOTA err in interpreting various provisions of the Kansas Retailers' Sales Tax Act?*

Second, the KDOR asserts that BOTA erred in its interpretation and application of certain provisions of the Kansas Retailers' Sales Tax Act. The KDOR complains that BOTA erroneously interpreted the Act by concluding that (1) K.S.A. 2016 Supp. 79-3602(ll), the 2003 amendment requiring that the definition of "selling price" with respect to tangible personal property include installation charges, did not apply to the real property improvement transactions at issue; (2) Lowe's was acting as a contractor in accordance with K.S.A. 2016 Supp. 79-3603(l) when performing installation contracts of built-ins; (3) the exclusion as set forth in K.S.A. 2016 Supp. 79-3603(p) covers the

installation services performed by Lowe's as to the built-ins referenced in this case; and (4) the installation activities were performed in connection with residential remodeling.

The KDOR asserts that it is entitled to relief under K.S.A. 2016 Supp. 77-621(c)(4) on the basis that BOTA erroneously interpreted or applied the law. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Unruh*, 289 Kan. at 1193. In making the unlimited review of a Kansas statute, deference is no longer given to the agency's interpretation. See *Douglas*, 296 Kan. at 559; *Ft. Hays St. Univ.*, 290 Kan. 446, Syl. ¶ 2. This ruling has been specifically applied to decisions of BOTA in *In re Tax Exemption Application of Kouri Place*, 44 Kan. App. 2d at 472. Once again, the parties agree that the KDOR has the burden to show that BOTA misapplied Kansas law. See K.S.A. 2016 Supp. 77-621(c)(1).

Under the Kansas Retailers' Sales Tax Act, K.S.A. 2016 Supp. 79-3603 imposes a sales tax on the retail sale of tangible personal property in Kansas. Under K.S.A. 2016 Supp. 79-3602(ll)(1)(E), the selling price of the tangible personal property includes any charges related to the installation of the property. However, K.S.A. 2016 Supp. 79-3603(p) provides a specific exemption from sales tax for all installation services connected with the "reconstruction, restoration, remodeling, renovation, repair or replacement of a residence." In this exclusion, there is no exception distinguishing the installation of built-ins from other residential home improvements. BOTA relied on this provision, read in conjunction with other provisions in the Kansas Retailers' Sales Tax Act, in its decision that Lowe's was exempt from paying sales tax on its installation services of various built-ins. The linchpin issue in this appeal is whether BOTA erred in determining that Lowe's services associated with installing built-ins qualified as residential remodeling under this exemption.

31

*K.S.A. 2016 Supp. 79-3602(ll) (the definition of selling price)*

The KDOR asserts that the signing of the SST Agreement in 2003 required the State to change how it had historically dealt with some real property improvement transactions. Specifically, the amendment to K.S.A. 79-3602(ll), which resulted from the adoption of the SST Agreement, modified the definition of "selling price" to include "installation charges." The KDOR argues that the services provided by Lowe's for the installation of built-ins are included in the definition of selling price under K.S.A. 2016 Supp. 79-3602(ll).

The fundamental purpose of the SST Agreement is "to simplify and modernize sales and use tax administration in the member states in order to substantially reduce the burden of tax compliance." The KDOR claims that its interpretation of K.S.A. 2016 Supp. 79-3602(ll) is more clear and less problematic than treating the sale of an appliance and the installation of an appliance as two different transactions and taxing them separately.

The term "installation" is not specifically defined in the Kansas Retailers' Sales Tax Act. Citing the definition in Merriam Webster's Collegiate Dictionary 606 (10th ed. 1996), BOTA stated that "install" means "to set up for use or service." The KDOR asserts that Lowe's cannot be considered a contractor when it is merely setting up an appliance rather than installing a real property improvement.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. See *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about legislative intent behind that clear language, and it should refrain

32

from reading something into the statute that is not readily found in its words. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

The KDOR points to the language of the installation contracts, which states that Lowe's "agrees to sell the goods and/or materials (the 'Goods') and the services to install same (the 'Installation Services") . . . for the stated total cash price (the 'Price'). The KDOR argues that the contractual provision closely parallels the statutory language in K.S.A. 2016 Supp. 79-3602(ll)(1), which states:

> "'Sales or selling price' applies to the measure subject to sales tax and means the total amount of consideration, including cash, credit, property and services, for which personal property or services are sold, leased or rented, valued in money, whether received in money or otherwise, without any deduction for the following:
> . . . .
> "(E) installation charges."

The KDOR asserts that the term "installation charges" as it appears in K.S.A. 2016 Supp. 79-3602(ll) covers the amounts billed for the services provided in connection with the Lowe's sales of installation contracts of built-ins. In making this argument, the KDOR dismisses BOTA's ruling that Lowe's is wearing another hat and acting as a contractor when it enters into installation contracts for the built-ins. The KDOR's argument appears to be based on its claim that Lowe's is exclusively a retailer and can never be a contractor in Kansas. But this contention is directly in contrast to the KDOR's treatment of home improvement transactions that did not involve built-in appliances.

Cram's testimony undermined the KDOR's position during cross-examination, however, by acknowledging that (1) the amendment did not indicate that the installation of an appliance is not a real property improvement; (2) the SST Agreement did nothing to alter what had previously been the general rule that real property improvements are not subject to sales tax; (3) the KDOR is the one that "came up with" appliances being carved

33

out of real property improvements; and (4) the amendment to K.S.A. 79-3602(ll)(1) dealing with the definition of sales price has nothing to do with real property improvements. Lowe's points to this evidence in support of its position that K.S.A. 2016 Supp. 79-3602(ll) addresses only the retail sales of tangible personal property and has nothing to do with the real property improvement contracts performed by Lowe's. Lowe's points out that the amendment did not affect either K.S.A. 2016 Supp. 79-3603(l) (dealing with the subcontractor part of the sales tax statute) or K.S.A. 2016 Supp. 79-3603(p) (the exclusion for real property improvements), neither of which was amended by the legislature after the State signed the SST Agreement.

*K.S.A. 2016 Supp. 79-3603(l)(the contractor subpart)*

The KDOR's second argument is that under K.S.A. 2016 Supp. 79-3603(l), Lowe's is considered to be a retailer with respect to its installed appliances.

The Kansas Retailers' Sales Tax Act contains specific provisions to address situations where a retailer also provides contracting services to its customers. The contractor subpart of this Act, K.S.A. 2016 Supp. 79-3603(l)(1), provides that sales tax imposed on "the gross receipts received from the sales of tangible personal property to all contractors, subcontractors or repairmen for use by them in . . . improving, altering, or repairing real or personal property."

According to the KDOR, K.S.A. 2016 Supp. 79-3603(l) does not govern the taxation of installed appliances. Instead, the statute applies to contractors. The KDOR notes that the term "contractor" previously applied to "a person who agrees to furnish and install tangible personal property" but that definition was repealed in 2000. The KDOR asserts that a contractor is someone who provides construction services as indicated by the language stating that the materials purchased by contractors are used in "erecting structures, or building on, or otherwise improving, altering, or repairing real or personal

34

property." K.S.A. 2016 Supp. 79-3603(1)(1). The KDOR asserts that since Lowe's used and consumed tangible personal property to install the built-ins into the customer's homes, and since K.S.A. 2016 Supp. 79-3603(l) does not contain the word "install," then Lowe's is not a contractor covered under the statute. Even though K.S.A. 2016 Supp. 79-3603(l) was unaffected by the SST Agreement, the KDOR now suggests that Lowe's can never qualify as a contractor under the contractor subpart.

The KDOR asserts a crucial difference between installation charges that were included in the retail selling price of tangible personal property under K.S.A. 2016 Supp. 79-3602(ll) and the services performed by contractors under K.S.A. 2016 Supp. 79-3603(l). The KDOR argues that Lowe's improperly classified its installation contracts of built-ins as a service by a contractor. The KDOR contends that including the installation of built-ins under the exclusion "would improperly expand the scope of K.S.A. 79-3603(l) and effectively do away with the inclusion of installation charges in the taxable selling price of tangible personal property such as dishwashers, microwave ovens, garbage disposals and other similar built-in appliances, which the legislature sought to require when it enacted K.S.A. 79-3602(ll)."

Price testified that Lowe's maintained an inventory of appliances for sale at retail from which appliances were withdrawn for purposes of making installed sales. The KDOR stated that Lowe's had made no effort to demonstrate that it qualified as a contractor under K.S.A. 2016 Supp. 79-3603(l), but Lowe's pointed to Price's testimony that each installation contract fell within generally understood definitions of restoration, remodeling, renovation, repair, or replacement.

Lowe's maintains that it should be regarded as a contractor when making sales of installed appliances that are classified as built-ins. Lowe's argues that the KDOR's position that one who installs an appliance cannot ever be considered a contractor is at odds with its previous position that Lowe's can act as a contractor in other instances. On

behalf of the KDOR, Cram acknowledged that Lowe's was a contractor when it entered "into installation contracts to make other home improvements such as a roof, a sink, a faucet, a shower head, water softening system, light fixture, [or a] ceiling fan." And while specifically addressing K.S.A. 2016 Supp. 79-3603(l), Cram testified:

> "[T]he idea is if you do contracting work but you also maintain an inventory that you make retail sales from, then essentially you wear two hats, you're a contractor when you purchase materials and you go out and do a construction job, and you're deemed to be the consumer of the materials that you purchased and you apply it to the construction project. [When] [y]ou're a retailer, you put your retailer hat on when you sell items out of your inventory for retail sale."

The KDOR also points to definitions in EDU-26 and EDU-28 for support that the installation of appliances is not included in the definition of construction contract, but the public information guides contain the follow disclaimer:

> "While every attempt is made to provide you with information that is consistent with Kansas tax statutes, regulations, and court decisions, nothing in this publication supersedes, alters, or otherwise changes any provision of the Kansas tax law. Department guidelines are not legal rulings and any information that is inconsistent with Kansas tax laws is not binding on either the department or the taxpayer."

The KDOR cites a Court of Appeals opinion in which the court found the KDOR's interpretation of a sales tax statute as set forth in an information guide to be persuasive, but the court acknowledged that "'[t]he final construction of the statute rests within the courts." See *In re Tax Appeal of Alsop Sand Co., Inc.*, 24 Kan. App. 2d 527, 530-31, 948 P.2d 667 (1997), *aff'd* 265 Kan. 410, 962 P.2d 435 (1998). BOTA correctly recognized that the information guides are invaluable resources for the Kansas business community but should receive no deference by the Kansas appellate courts. See *In re Tax Appeal of Cessna Employees Credit Union*, 47 Kan. App. 2d 275, 279, 277 P.3d 1157 (2012).

36

As mentioned, the KDOR argues that Lowe's could not be considered to be a contractor because "the definition of 'contractor' previously contained in the sales tax act has since been repealed." Under the prior law, contractors were defined to include persons "who furnish and install tangible personal property." K.S.A. 79-3602(r). However, there is testimony from Cram on behalf of the KDOR that refutes the KDOR's position that the repeal of the definition resulted in the fact that Lowe's could never act as a contractor. At trial, Cram addressed Private Letter Ruling 1998-20: Contractor vs Contractor/Retailer (February 20, 1998), in which the KDOR instructed contractor-retailers like Lowe's that "when the contractor/retailer removes materials from inventory to use on a construction project, the contractor/retailer would report and pay the appropriate sales tax on the cost of the materials." Cram confirmed that even though the legislature subsequently repealed the statutory definition of contractor referenced in the Letter Ruling, the substance of the ruling is "still the rule" in Kansas.

Under K.S.A. 2016 Supp. 79-3603(l)(1), the services performed by contractors consist of "erecting structures, or building on, or otherwise improving, altering, or repairing real or personal property." Similarly, K.A.R. 92-19-66 denominates contractor services as "building, constructing, erecting, equipping, furnishing, repairing, servicing, altering, maintaining, enlarging, reconstructing or remodeling." The KDOR finds it significant that the word "install" is absent from both the statute and the administrative regulation. But it fails to explain how the installation procedures explained by Price and in the installation manuals could not also meet the definitions above. Lowe's presented evidence suggesting that installing a built-in would qualify as improving, altering, servicing, or remodeling.

The KDOR also attacks Lowe's distinction between the installation of built-ins from the installation of other appliances, such as refrigerators, washing machines, electrical dryers, and freezers. Lowe's paid sales tax on the installation of those basic appliances. However, as analyzed in detail by BOTA, Lowe's presented extensive

evidence on the installation procedures of the built-ins through exhibits and the testimony of Price. BOTA found that the evidence satisfied the definitions found in K.S.A. 2016 Supp. 79-3603(p) of reconstruction, restoration, remodeling, renovation, repair, or replacement. BOTA specifically noted that the KDOR presented no witness testimony or documentary evidence controverting any of the installation evidence presented by Lowe's. A recounting of this evidence is not necessary since it is uncontroverted in the record on appeal.

Lowe's notes that the differential treatment of the appliances turns on whether the tangible personal property became a part of the real estate. BOTA analyzed each of the built-ins to see whether sufficient evidence was presented to determine whether the tangible personal property became a fixture of the real estate. The KDOR challenges this method as "completely untenable," indicating that if the legislature intended for such a distinction to be made, it could have provided for such a distinction. The KDOR also notes the "futility" of trying to administer a "fixtures test" to distinguish between taxable and exempt services, citing *Kansas City Millwright Co., Inc. v. Kalb*, 221 Kan. 658, 562 P.2d 65, *modified* 221 Kan. 752, 564 P.2d 1280 (1977). However, a review of this property law is not necessary; instead, we will focus on the language of the statutes and the evidence relied on by the parties in support of the asserted tax exemption.

Lowe's points to the fact that the KDOR considers Lowe's to be a contractor under K.S.A. 2016 Supp. 79-3603(l) for every home improvement installation that did not involve built-ins and the wording of the exclusion expressly prohibits imposing sales tax on "the service of *installing* or applying tangible personal property . . . in connection with . . . reconstruction, restoration, remodeling, renovation, repair or replacement of a residence." (Emphasis added). K.S.A. 2016 Supp. 79-3603(p). Lowe's asserts that contractors do install tangible personal property to improve real property in Kansas.

38

BOTA specifically relied on the fact that the KDOR did not dispute the fact at the hearing that Lowe's can operate as both a retailer and a contractor in Kansas. Now, the KDOR contends that Lowe's is not a contractor under K.S.A. 2016 Supp. 79-3603(l), and it asserts new theories for the first time on appeal. In light of its acceptance of Lowe's as a contractor in the installation of roof, sinks, faucets, shower heads, etc., its new position that Lowe's can never be considered a contractor under K.S.A. 2016 Supp. 79-3603(l) is not persuasive. The true distinction is in the nature of the tangible personal property being sold and whether the installation of the property under an installation contract qualifies as reconstruction, restoration, remodeling, renovation, repair, or replacement as provided in the exemption statute, K.S.A. 2016 Supp. 79-3603(p).

### *K.S.A. 2016 Supp. 79-3603(p)(the residential remodeling exemption)*

The KDOR argues that the installation of built-ins does not constitute exempt residential remodeling. In support, the KDOR points to the testimony of its own employee, Cram, who stated that the installation of an appliance, without any additional labor, does not constitute residential remodeling. BOTA found that reconstruction, restoration, remodeling, and other similar terms contained in K.S.A. 2016 Supp. 79-3603(p) "cover all the various installation[] activities performed herein by Lowe's." BOTA found that the installation activities performed by the contractor in installing the built-ins were performed "in connection with" residential remodeling.

K.S.A. 2016 Supp. 79-3603(p) provides that sales tax shall be paid on:

> "(p) the gross receipts received for the service of installing or applying tangible personal property which when installed or applied is not being held for sale in the regular course of business, and whether or not such tangible personal property when installed or applied remains tangible personal property or becomes a part of real estate, *except that no tax shall be imposed upon the service of installing or applying tangible personal property in connection with the original construction of a building or facility, the original*

39

*construction, reconstruction, restoration, remodeling, renovation, repair or replacement of a residence* or the construction, reconstruction, restoration, replacement or repair of a bridge or highway." (Emphasis added.)

The KDOR gives two reasons why BOTA erred in its conclusion that the installation services provided in connection with Lowe's sale of appliances are exempt from sales tax under K.S.A. 2016 Supp. 79-3603(p). First, the KDOR points to the fact that BOTA focused on whether the tangible personal property became "part of real estate." The KDOR points out that the statute notes that this inquiry is not relevant to whether sales tax is due and that BOTA ignored the plain language of the statute in analyzing whether the built-ins were fixtures. See *Kansas City Millwright Co.*, 221 Kan. at 664; *In re Tax Appeal of R & R Janitor Service*, 9 Kan. App. 2d 500, 505, 683 P.2d 909 (1984). The statute clearly indicates that sales tax should be collected "whether or not such tangible personal property when installed or applied remains tangible personal property or becomes part of real estate." K.S.A. 2016 Supp. 79-3603(p).

The KDOR persuasively argues that the fixtures discussion was not relevant to this decision and should have been avoided by BOTA. But regardless of the fixtures discussion, BOTA based its final conclusion on the clause of the statute that provides an exemption for "the service of installing or applying tangible personal property in connection with the original construction of a building or facility, the original construction, reconstruction, restoration, remodeling, renovation, repair or replacement of a residence." K.S.A. 2016 Supp. 79-3603(p).

BOTA concluded:

"As discussed above, the evidentiary burden herein is on Lowe's. Based on the record evidence, the Board finds that Lowe's has satisfied its burden[] by presenting substantial credible, mostly uncontroverted evidence that the built-in transactions at issue all involved improvements to residential properties and, further, that Lowe's, in

40

undertaking these installations, was acting as a contractor. Moreover, the Board finds these installations of real property improvements were performed in connection with the reconstruction, restoration, remodeling, renovation, repair and/or replacement of a residence and are, therefore, exempt from the retailers' sale tax pursuant to K.S.A. 79-3603(p). Simply put, the substantial credible record evidence persuades the Board that Lowe's installation of the subject built-ins follow the same statutory pathway for taxation as Lowe's cabinetry, flooring, water heaters, roofs, sinks, faucets, shower heads, water softening systems, light fixtures, and ceiling fans."

So although BOTA may have become distracted with an analysis of fixtures, the ultimate conclusion reached by BOTA relied on the language of the exemption.

Second, the KDOR asserts that BOTA erred in its construction of K.S.A. 2016 Supp. 79-3603(p) by failing to give effect to the statute as a whole and to specific words and phrases contained therein. The KDOR asserts that certain portions of the statute were disregarded and treated as surplusage. See *In re Estate of Rickabaugh*, 51 Kan. App. 2d 902, 917, 358 P.3d 859 (2015) (citing *Siruta v. Siruta*, 301 Kan. 757, 763, 348 P.3d 549 [2015]), *rev. granted* 303 Kan. 1078 (2016). The KDOR focuses on the phrase "in connection with."

K.S.A. 2016 Supp. 79-3603(p) imposes tax on "the gross receipts received for the service of installing or applying tangible personal property." Without more, the installation of the built-ins would be taxable. But the legislature provided a specific exemption for a situation when installation services are performed at a residence "*in connection with . . .* the original construction, reconstruction, restoration, remodeling, renovation, repair or replacement of a residence." (Emphasis added.) K.S.A. 2016 Supp. 79-3603(p).

The KDOR asserts that BOTA failed to give effect to the phrase "in connection with." The statutory phrase in connection with has been defined as "related to, linked to,

41

or associated with." *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518, 526 (Iowa 2005) (an act is made "in connection with" commercial activity if there is a substantive connection or causal link between the two things). See *Key Air, Inc. v. Commissioner of Revenue Services*, 294 Conn. 225, 238, 983 A.2d 1 (2009) (statutory phrase "in connection with" prescribes a factual, contextual, or causal relationship); *Ben Ali v. Towe*, 30 N.J. Super. 19, 24, 103 A.2d 158 (1954) (words in the statutory phrase "used in, for or in connection with the violation," all refer to a tie of causality or dependency, representing varying degrees of proximity in the relationship between two things). The KDOR claims that BOTA failed to give effect to the phrase "in connection with" because it did not explicitly find a link or connection between the installation of Lowe's appliances to the performance of one of the specifically mentioned services in the statute, such as remodeling, renovation, etc.

The KDOR claims that BOTA erroneously construed the term "installation" as being coextensive with, and indistinguishable from, these other services. The KDOR complains that "[b]y equating 'installation' with, for example, 'remodeling,' instead of requiring a connection between the two, BOTA's interpretation effectively enlarged the scope of the statutory exception to such an extent that it effectively does away with the imposition of tax on residential installation services of any kind." But the exemption did not refer exclusively to residential services. The statute also provided an exemption for those activities in connection with a "bridge or highway." K.S.A. 2016 Supp. 79-3603(p). The exemption would not apply to the renovation or remodeling of a commercial building, so the part of the statute levying a tax for the service of installing or applying tangible personal property still has meaning despite the exemption for the stated activities associated with residences, bridges, and highways.

KDOR's complaint is without merit. The phrase "in connection with" consists of words of common and ordinary meaning. It is not significant that BOTA did not

explicitly define or discuss the phrase "in connection with" as it was not an issue identified in the prehearing order and was not at issue below.

In K.S.A. 2016 Supp. 79-3603(p), the legislature provided a tax exemption for "the service of installing or applying tangible personal property . . . in connection with the original construction of a building or facility, the original construction, reconstruction, restoration, remodeling, renovation, repair or replacement of a residence." BOTA found that Lowe's presented evidence establishing that its services of installing built-ins in residences met the statutory exemption. The KDOR has not shown that BOTA erroneously interpreted or applied the law in reaching this conclusion.

*Other states*

For additional support, Lowe's has included evidence about other states in which it has litigated issues related to the taxation of services relating to installed appliances. Although the Kansas tax statutes admittedly differ from those in other states, Price testified that several states that are also members of the SST Agreement—specifically Oklahoma, Indiana, and North Carolina—have addressed the issue of whether Lowe's is acting as a contractor when it installed improvements into customers' homes. In each case, the courts ruled in Lowe's favor. In the KDOR's reply brief, it points out how the statutes in those states differ from the statutes in Kansas. However, we have concluded that these decisions should not be given much weight on either side of the issue, as the focus should be on the construction of the Kansas statutes.

*Conclusion*

Considering the language of the statutes and the evidence in the record, BOTA properly interpreted and applied Kansas law in determining that Lowe's was acting as a contractor when it installed built-ins into customer's homes. Under K.S.A. 2016 Supp.

43

79-3603(p), "no tax shall be imposed upon the service of installing or applying tangible personal property in connection with . . . the original construction, reconstruction, restoration, remodeling, renovation, repair or replacement of a residence." The KDOR has failed to show that BOTA erroneously interpreted or applied the statutes in reaching its decision.

*Does substantial evidence support BOTA's findings?*

The KDOR next claims that there was a lack of substantial evidence to support BOTA's findings that Lowe's appliances were installed in residences and that such installations were in connection with other construction-related activities. Specifically, it complains that BOTA found that all of the installations involved residential properties.

K.S.A. 2016 Supp. 77-621(c)(7) allows an appellate court to grant relief if the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in the light of the record as a whole. After being amended in 2009, K.S.A. 2016 Supp. 77-621(d) now defines "in light of the record as a whole" to include the evidence both supporting and detracting from an agency's finding. Courts must now determine whether the evidence supporting the agency's factual findings is substantial when considered in light of all the evidence. K.S.A. 2016 Supp. 77-621(d); *Redd v. Kansas Truck Center*, 291 Kan. 176, 183, 239 P.3d 66 (2010). Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined. *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709, 216 P.3d 170 (2009). The parties agree that under K.S.A. 2016 Supp. 77-621(c)(7), the KDOR bears the burden of establishing the absence of substantive evidence to support the BOTA's factual findings.

44

The KDOR cannot meet this burden. The record contains substantial evidence to support the Board's finding that the installation services related to built-ins were statutorily exempted from sales tax under the terms K.S.A. 2016 Supp. 79-3603(p). Price testified that he researched the rate of commercial versus residential installation of built-ins for the most recent 110 weeks. Price also talked to employees about sales during the last 2 years. After completing his research, Price determined that the percentage of built-ins to commercial properties was less than 1%. Both Cram and Gustafson were asked about this at trial, but neither witness was able to dispute the evidence presented by Lowe's that nearly all of its business regarding the installation of built-ins involved residences. The KDOR attacks Lowe's evidence on this issue as weak and insubstantial, but it failed to provide any evidence that controverted Lowe's evidence. The KDOR did not present any evidence that Lowe's failed to pay taxes on installation services relating to commercial properties.

The KDOR complains that BOTA erroneously allowed Price's testimony on this point. When Price specifically referenced evidence given to him by store employees, the KDOR objected on the grounds of hearsay. The presiding chair of BOTA overruled the objection. Regardless of whether that specific evidence constituted hearsay, Price made his own conclusions and testified that the rate of transactions involving commercial properties was less than 1%. This testimony was uncontroverted by the KDOR. As such, an analysis of the hearsay issue is not necessary. BOTA concluded that "virtually all" of Lowe's appliances were installed in residences. The record supports this conclusion.

The KDOR also complains that there was not substantial evidence that the installations were in connection with other construction-related activities such as renovation, remodeling, and reconstruction as required under the exemption in K.S.A. 2016 Supp. 79-3603(p). This argument relates directly back to the KDOR's position that BOTA failed to address this phrase of the statute in its statutory interpretation. However, as noted above, this phrase is a common phrase of ordinary meaning. There was no issue

45

that the installations were not in connection with the activities listed in the statute, and there was no evidence presented otherwise. The evidence presented supported Lowe's position that the exemption applied. By pointing to evidence that Price referred to the sales as "individual type installs," the KDOR seems to be suggesting that Lowe's had to show that the installation of the built-in was part of a larger renovation or remodeling project. But K.S.A. 2016 Supp. 79-3603(p) does not restrict the exemption to large projects; the installation of a single built-in could satisfy the statutory exemption.

The record contains substantial evidence when reviewed in light of the record of a whole to support BOTA's conclusion that the installation services at issue were exempt under K.S.A. 2016 Supp. 79-3603(p).

*Is BOTA's decision unreasonable, arbitrary, or capricious?*

Finally, the KDOR complains that BOTA's decision to abate the tax assessment "in its entirety" was unreasonable, arbitrary, or capricious.

K.S.A. 2016 Supp. 77-621(c)(8) requires an appellate court to grant relief if BOTA's action is otherwise unreasonable, arbitrary, or capricious. Again, the parties agree that the KDOR bears the burden in showing that BOTA's decision is unreasonable, arbitrary, or capricious.

An agency action is unreasonable when it is taken without regard to the benefit or harm to all interested parties or is without foundation in fact. And an action is arbitrary and capricious if it is unreasonable or lacks any factual basis. *Wheatland Electric Cooperative v. Polansky*, 46 Kan. App. 2d 746, Syl. ¶ 4, 265 P.3d 1194 (2011).

"Essentially, the test under K.S.A. [2016 Supp.] 77-621(c)(8) determines the reasonableness of the agency's exercise of discretion in reaching its decision based upon

46

the agency's factual findings and the applicable law." *Wheatland Electric Cooperative*, 46 Kan. App. 2d at 757. In assessing the reasonableness of an agency's action, a reviewing court may find it helpful to consider whether:

"(1) the agency relied on factors that the legislature had not intended it to consider; (2) the agency entirely failed to consider an important aspect of the problem; (3) the agency's explanation of its action runs counter to the evidence before it; and (4) whether the agency's explanation is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wheatland Electric Cooperative*, 46 Kan. App. 2d at 757.

First, the KDOR declares that at least "some of its sales included in the assessment were taxable." However, it acknowledges that it presented no evidence at the hearing to establish what that amount might be. Absent evidence presented to BOTA of any specific amount of tax that might have actually been due and owing, it cannot be shown that BOTA acted unreasonably, arbitrarily, or capriciously in abating the entire assessment.

In discovery, Lowe's challenged the taxability of every home improvement transaction listed in the assessment with the exception of nine specific transactions. Lowe's asserts the total amount of sales tax on the transactions would have totaled $634.56, but the amount in dispute is not included in the record on appeal. The KDOR did not raise this issue or present evidence about these transactions at the hearing, and BOTA followed the KDOR's lead and did not consider this amount in abating the tax owed. Lowe's claims the KDOR waived the issue by not presenting it at the hearing. In the prehearing order, it was mentioned that Lowe's acknowledged that "several of the disputed transactions were taxable," but the KDOR does not point to any evidence that it presented at the hearing to support the amount due on these specific transactions. Because the KDOR failed to present evidence on this issue below, the issue is deemed abandoned. The KDOR does not assert an exception to the general rule that an issue not raised below should not be addressed for the first time on appeal. Because the issue was not raised

47

below, it should not now be addressed on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011).

Second, the KDOR claims that BOTA's ruling was "vague and unspecific" because it did not expressly address or grant Lowe's request for an abatement of the $33,957 penalty charge in the assessment. We agree that BOTA's ruling is unclear. The Board stated that it abated the adjusted assessment in its entirety, but it also specifically referenced the amount as $162,584. This amount represented the total amount of disputed tax due, but BOTA failed to mention the $33,957 penalty charge at issue. The prehearing order included the penalty charge, asking for a total amount due of $196,541.

In abating the assessment, BOTA also indicated that Lowe's "request for relief from the interest and penalties applied to the adjusted assessment is hereby deemed moot as the underlying assessment has been hereby canceled in its entirety." Lowe's asserts that this language indicates that BOTA abated all assessed taxes, all interest, and all penalties. The KDOR asserts that the $33,957 in penalties also related to the amount of tax that Lowe's agreed that it owed and paid prior to the evidentiary hearing. It claims the $33,957 is due and owing. Although BOTA could have been more clear in mentioning that the $33,957 in penalties was abated, the language used made it clear that it was abating all penalties. The KDOR has not shown that BOTA acted unreasonably, arbitrarily, or capriciously in doing so.

Third, the KDOR complains that BOTA acted unreasonably in allowing Lowe's to assert the exclusion as a claim for relief because it was not included in its original notice of appeal filed with BOTA. In an attempt to remedy this omission, Lowe's moved to amend the pleadings. The KDOR opposed the amendment, but BOTA granted the motion.

48

A trial court has discretion in permitting or refusing to amendments of pleadings. *Trimble, Administrator v. Coleman Co., Inc.*, 200 Kan. 350, 359, 437 P.2d 219 (1968). The KDOR does not provide any citation to a statute or case that prohibits BOTA from amending pleadings. In granting Lowe's motion for leave to amend the pleadings, BOTA noted that

> "the parties prepared a prehearing (pretrial) order to regulate the conduct of the proceedings, and [Lowe's] clearly cited K.S.A. 79-360[3](p) as an applicable exemption statute in its theory of claims. In the course of *de novo* proceedings before [BOTA], the prehearing order is the point in time at which all the specific claims and defenses of the parties must be set forth. See K.A.R. 94-5-1; K.S.A. 77-517; K.S.A. 60-216."

BOTA allowed Lowe's to state a claim for relief under K.S.A. 2016 Supp. 79-3603(p), and it amended the notice of appeal to include all claims made by Lowe's in the prehearing order.

The KDOR now claims that it was unfair to allow the amendment, but the KDOR was aware that Lowe's was relying in part on the exclusion in K.S.A. 2016 Supp. 79-3603(p), and the KDOR can show no surprise or prejudice that resulted from BOTA's decision to allow the amendment. As KDOR indicated in its brief, "because the [KDOR] Secretary's designee had ruled that Lowe's was not entitled to relief under K.S.A. 79-3603(p), both parties were aware that this determination could be challenged on appeal." There is no merit to the KDOR's claim that BOTA injected an entirely new claim "at the eleventh hour."

The KDOR has not met its burden in showing that any of the complained-of actions by BOTA were unreasonable, arbitrary, or capricious.

Affirmed.

49